Jim Duke RODERICK *v.* STATE of Arkansas

CR 85-86                                                    705 S.W.2d 433

Supreme Court of Arkansas
Opinion delivered March 17, 1986
[Rehearing denied April 21, 1986.*]

---

* Purtle, J., not participating.

*Brad J. Beavers* and *W. Frank Morledge, P.A.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joel O. Huggins*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. On the evening of Friday, August 12, 1983, the nude body of Linda Cruce was found in a rural area of St. Francis County. The sheriff's office began an investigation, obtaining information that the appellant, Jim Duke Roderick, had been seen with Linda Cruce several times leading up to the discovery of the body.

On Monday evening, August 15, having heard the sheriff wanted to talk to him, Roderick came to the sheriff's office at about 7:00 o'clock where he was arrested, given the Miranda warnings and placed in a jail cell. Sometime around midnight Roderick sent word that he wanted to talk and he gave a statement which implicated him in the murder. He said when he and Linda left the Razorback on Thursday evening she wanted to go to the Legion Club; when he told her he didn't have any more money she called him a "no good bum." He said he struck her with the heel of his hand on her neck and she slumped over. He drove to a secluded spot, removed her clothes and had sex with

her. Afterwards he realized she was not breathing, so he left her body nearby and threw her clothes and purse in the river near Big Eddie's Hill.

Roderick was tried, convicted and sentenced to life without parole, which brings this appeal. He presents a number of points of error, one of which is persuasive and requires reversal. Roderick argues that because there was no probable cause for his arrest his statement should have been suppressed. The argument must be sustained.

■ Probable cause to arrest without a warrant exists when the facts and circumstances within the officers' collective knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed by the person to be arrested. *Coble* v. *State*, 274 Ark. 134, 624 S.W.2d 421 (1981); *Brinegar* v. *United States*, 338 U.S. 160 (1949); *Carroll* v. *United States*, 267 U.S. 132 (1925). A.R.Cr.P. Rule 4.1. It has been held not to require that degree of proof sufficient to sustain a conviction. *McGuire* v. *State*, 265 Ark. 621, 580 S.W.2d 198 (1979). Its determination is based on factual and practical considerations of prudent men rather than of legal technicians. *Sanders* v. *State*, 259 Ark. 329, 532 S.W.2d 752 (1976). However, a mere suspicion is not enough. *Wong Sun* v. *United States*, 371 U.S. 471 (1963). Even a "strong reason to suspect," will not suffice. *Henry* v. *United States*, 361 U.S. 98 (1959).

With that background, we find probable cause in this case to be plainly lacking. Three officers testified: Sheriff Coolidge Conlee, Chief Deputy Evan Hughes and Deputy Chuck Thomas. Their proof, separately or combined, failed to add up to more than a bare suspicion. The substance of their information was that Roderick, who was having marital problems, was seen on Wednesday and Thursday nights drinking beer with the victim at the Crazy Horse Saloon and at the Razorback Club. There was a report that they were "shacking up." The two were last seen together leaving the Razorback at about 9:00 or 9:30 on Thursday evening, August 11. On the evening of August 12 the victim's body was found off Barrow Hill Road near Lake St. Francis.

■■ We think the information of the officers at the time

Roderick was arrested fails to rise to the level of probable cause. Given its strongest import, it amounts to little more than that the two were seen together in public, which can hardly translate into probable cause to charge Roderick with murder. The point is best illustrated by the testimony of the officers themselves: Officer Thomas, who was in charge of the investigation, testified candidly that there was nothing in his investigation that led him to believe Roderick had committed the crime at the time of his arrest. Sheriff Conlee's testimony provides no help, as he said there was nothing to tie Roderick to the crime at the time of his arrest except that he was the last person to be seen with Linda Cruce. Sheriff Conlee's tacit acknowledgement that probable cause was wanting is found, we believe, in his admission that Roderick was not charged with any crime on Monday evening when he was undeniably arrested, but was charged simply with "suspicion of murder." The sheriff said he was "only a suspect" until he gave his statement sometime after midnight on August 16. There is, of course, no crime known as "suspicion of murder," and one who is merely suspected of a crime, while subject to a brief detention (A.R.Cr.P. Rule 3.1), is not subject to arrest. The testimony of Officer Hughes adds nothing not already mentioned.

■ The state points out that when Roderick came to the Sheriff's office on Monday evening he denied knowing Linda Cruce. But that did not come out until Roderick testified at the trial, and even when that element is added to the remaining proof, it comes up short. Whatever Roderick's initial statement may have been, it obviously was not regarded by the officers as significant because none of them mentioned it in the suppression hearing. It is their knowledge at the moment of arrest that determines whether probable cause exists. *Beck* v. *Ohio*, 379 U.S. 89 (1964). For the reasons stated, we find there was no probable cause to arrest Jim Duke Roderick on Monday evening. "Arrest on mere suspicion collides violently with the basic human rights of liberty." *Henry* v. *United States, supra,* p. 101.

■■ That brings us to the collateral issue — is the statement Roderick gave after midnight tainted by his unlawful arrest? The state has a heavy burden of proof in this case. It must prove that the statement, made while Roderick was in custody, was not only voluntary, *Harvey* v. *State,* 272 Ark. 19, 611 S.W.2d 762 (1981), but that there was no causal connection between the

statement and the illegal arrest. *Brown* v. *Illinois*, 422 U.S. 590 (1975). *Dunaway* v. *New York*, 442 U.S. 200 (1979). Those determinations are made upon the totality of the circumstances at the time the statement was given. *Fuller* v. *State*, 278 Ark. 450, 646 S.W.2d 700 (1983). On appeal that evidence is reviewed independently of the trial court's findings as to the issue of voluntariness. *Hunes* v. *State*, 274 Ark. 268, 623 S.W.2d 835 (1981).

■ As to the illegal arrest, it has long been the rule that statements, like objects, are to be excluded as evidence if they are found to be the fruits of an unlawful arrest. *Wong Sun* v. *United States*, 371 U.S. 471 (1963). In *Brown* v. *Illinois, supra*, the Supreme Court reversed a holding by the Illinois Supreme Court that the giving of the Miranda warnings following an illegal arrest operated as an intervening cause to purge the primary taint of the unlawful arrest. The United States Supreme Court observed:

> It is entirely possible . . . that persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality. But the Miranda warnings, *alone* and *per se*, cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession.

■ Thus, whether the confession or statement is an act of free will must be answered on the facts of each case: "the temporal proximity between the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant" (*Brown* v. *Illinois, supra*, at pp. 603-604).

■ By that standard we believe this statement should not have been admitted. The clear lack of probable cause, tacitly conceded by the officers, the fact that Roderick was jailed merely on suspicion and told to "think it over," the lapse of only a few hours between the arrest and the statement, weigh against the premise that the statement was voluntary. Coupled with those elements is the testimony by Roderick he was alternately threatened with being locked up in the hole (where he would "never see daylight again") and coaxed with assurances of

assistance. We need not weigh the pros and cons of that disputed testimony, it is enough to note the state failed to demonstrate that the illegal arrest and the ensuing statement were separate and independent of each other. Thus the state has failed in its burden of proof and, accordingly, the statement should have been suppressed.

The remaining points are rendered moot by this reversal, but those that could arise again will be addressed for purposes of another trial.

Roderick complains that he was denied the right on voir dire to ask three questions of prospective jurors: 1) the juror's reaction to claims by the sheriff that there had been no unsolved murders during his tenure as sheriff; 2) the juror's reaction to the verdict in the trial of John DeLorean, and 3) how the juror might describe the defendant to a spouse or close friend. We do not find the questions so plainly appropriate that we are prepared to say the trial court's discretion was abused. *Sanders* v. *State*, 278 Ark. 420, 646 S.W.2d 14 (1983).

Nor do we think the refusal of the trial court to permit the taking of discovery depositions by the defense was an abuse of discretion. *Hoggard* v. *State*, 277 Ark. 117, 640 S.W.2d 102 (1982).

Roderick insists the charge of capital murder should have been reduced to first degree murder because there was no evidence rape occurred while Linda Cruce was alive. We disagree. From the proof as a whole we think the jury could have inferred that the underlying reason for the murder was rape or attempted rape, either of which would support the charge. Ark. Stat. Ann. § 41-1501 (Repl. 1977).

Another argument is the court erred in refusing to instruct the jury on negligent homicide. We note that the trial court did instruct on first degree murder, second degree murder and manslaughter. We think the jury was properly instructed on the proof presented.

We disagree with Roderick that the trial court erred in disallowing the introduction of a portion of the transcript from another trial in Wynne, Arkansas, in which Roderick was a witness. The trial involved criminal charges for the theft of a

truck in Memphis which Roderick contends occurred on the night of August 11, 1983, the night Linda Cruce was murdered. Roderick was a witness for the state against the defendants, testifying that together they had stolen the truck. Roderick submits the state relied on Roderick's credibility in the Wynne trial and he is entitled to show that to the jury in this trial. The trial court rejected the proof on grounds of relevancy, and we are not in a position to dispute that ruling. The proffer does not show that the theft occurred on August 11, or in such a manner as to categorically exclude Roderick from involvement in the homicide of Linda Cruce. The relevance of evidence rests largely on the discretion of the trial court, subject only to limited review. We find no error. *Firestone Tire & Rubber Co.* v. *Little*, 276 Ark. 511, 639 S.W.2d 726 (1982).

The other arguments: the denial of a motion for a continuance; an asserted conversation between Officer Hughes and James Taylor, who testified ahead of Hughes, concerning the type of questions asked, in violation of the court's instructions; and the seating of three jurors over defense objections that they should have been excused for cause, should not arise again and warrant no discussion. We take this opportunity, however, to mention a juror whose brother was a regular deputy sheriff of St. Francis County at the time of this arrest and trial. The defense insists the juror should have been excused for cause. The statutes on implied and actual bias don't reach this exact situation and while we recognize the difficulty of forging a standing rule to meet marginal problems, we appreciate the defendant's position that he ought not to have to use a peremptory challenge on a prospective juror whose brother works for the sheriff. When the sheriff is an obvious partisan, as might be expected, and is actively involved in the investigation, arrest and trial, it is difficult to conceive how this juror could be wholly oblivious as to how her vote might impact on her brother's standing. Without second guessing the trial court on this issue, we think some liberality in applying the statute on implied bias would be in order. That was done in the second trial of Paul Ruiz and Earl Denton, and we affirmed. *Ruiz and Denton* v. *State*, 273 Ark. 94, 617 S.W.2d 6 (1981), and see *Henslee* v. *State*, 251 Ark. 125, 471 S.W.2d 352 (1971).

The judgment is reversed and the cause remanded to the trial

court.

Purtle, J., not participating.