Mary Francis HENRY *v.* STATE of Arkansas

CR 91-230                                            828 S.W.2d 346

Supreme Court of Arkansas
Opinion delivered March 30, 1992

*Arthur Gilmore, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Mary Francis Henry, was convicted of delivery of a controlled substance, possession of a controlled substance with intent to deliver, and conspiracy to deliver a controlled substance for her involvement, along with members of her family, in the sale of cocaine. She was sentenced to a total of thirty-eight years imprisonment and $47,000 in fines. On appeal, Henry raises numerous points of error, none of which have merit, and we affirm.

## I. VOIR DIRE

Henry first argues the trial court erred in restricting defense counsel's questioning of certain venirepersons during voir dire.

The purpose of voir dire is to discover if there is any basis for challenge for cause and to gain knowledge for the intelligent exercise of peremptory challenges. Ark. R. Crim. P. 32.2. The extent and scope of voir dire is generally within the sound discretion of the trial court and, absent a clear abuse of this discretion, we will not reverse. *Bryant* v. *State*, 304 Ark. 514, 803 S.W.2d 546 (1991); *Johnson* v. *State*, 298 Ark. 617, 770 S.W.2d 128 (1989).

The first two instances in which Henry complains the trial court unduly restricted voir dire examination by the defense involved questions that had already been asked and answered. Defense counsel first inquired, in essence, whether the venirepersons believed Henry must have done something wrong in order to have been brought to trial. The following exchange occurred:

> VENIREPERSON MCKINNON: Obviously, there's evidence against her or they would not have brought us all here. But I don't know whether she's guilty or innocent because I haven't heard the evidence.

> DEFENSE COUNSEL: In other words, right now you believe that she has done something wrong, or she wouldn't be brought to trial here. Is that correct:

> VENIREPERSON MCKINNON: That is not what I said. I said that there is evidence against her or she wouldn't be here. But whether she's guilty or innocent I don't know.

At this point, the State objected that the question was improper. The trial court ruled the question was proper but that it had already been asked and answered, in addition to a number of earlier questions posed by defense counsel concerning whether the venirepersons believed in the presumption of innocence and whether they believed the mere filing of charges indicated guilt.

The second instance occurred following a line of questioning as to whether the prospective jurors felt Henry needed to testify to prove her innocence. The trial court sustained the State's objection to the following additional question posed to venireperson Barr: ". . .But would you, Miss Barr, truthfully expect to hear from her before you entered a verdict of not guilty in order to render a verdict of not guilty?" Henry's counsel admitted "it was the same question in a different way" and the trial court remarked that the question had been answered, the same question had been asked in different ways, and that some of the questions had previously been addressed in the general voir dire. The trial court was correct in restricting the repetitive questions. There is no abuse of discretion when the trial court curtails protracted voir dire examination. *Clay* v. *State*, 262 Ark. 285, 556 S.W.2d 137 (1977).

■ In a third disputed instance, the trial court sustained the State's objection to defense counsel's inquiry of whether the venirepersons were acquainted with people "who don't trust banks, and don't put their money in the bank?" Henry argues the question was necessary since the State's case rested upon large amounts of money seized in her home. We find no abuse of discretion in the trial court's ruling that the question did not touch upon the qualifications of the venirepersons to serve as impartial jurors.

■ Two other questions were disallowed as being too speculative. In one, defense counsel asked a potential juror what he would do if another juror made reference, in the jury room, to the fact that Henry did not testify. In another, Henry's counsel inquired of venireperson Moore whether it would "weigh on [her] conscience . . . to find Mrs. Henry not guilty if [Ms. Moore] thought [Henry] was guilty but was not convinced beyond a reasonable doubt?" to which Ms. Moore replied "One more time?" Again, the questions were variations on previous lines of questioning. Moreover, the trial court did not abuse its discretion in restricting questions that were potentially confusing to the prospective jurors. *See Johnson* v. *State*, 288 Ark. 101, 702 S.W.2d 2 (1986).

## II. EXCUSAL FOR CAUSE

Henry next argues the trial court erred in excusing for cause venireperson Tori Staples. During voir dire examination by the State, Ms. Staples stated that she had gone to school with Henry's daughter and that when they see each other, they have a conversation. Ms. Staples said if she were to sit as a juror and a verdict was rendered against Henry, it would cause her embarrassment when she encountered Henry's daughter. She stated it would be difficult for her to sit as an impartial juror.

Upon further questioning, Ms. Staples did state she felt she could act impartially in her consideration of the evidence and apply the law to the facts and evidence; however, she again stated that "as far as serving, I would rather not." She said the anticipation of embarrassment would cause her problems in sitting as a juror in the case.

■■ A potential juror may be challenged for cause if he or

she is actually biased. A venireperson is actually biased if he or she cannot try the case impartially and without prejudice to the substantial rights of the party challenging. Ark. Code Ann. § 16-33-304(b)(2)(A) (1987). This determination lies within the sound discretion of the trial court. *See Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1984). Ms. Staples' responses to questions of whether she could try the case impartially were, at best, conflicting, and she clearly stated she would prefer not to be seated on the jury due to her acquaintance with Henry's daughter. The trial court is in a superior position to assess the demeanor of the prospective jurors, *Fleming* v. *State, supra*, and we see no abuse of the trial court's discretion in excusing Ms. Staples for cause.

## III. PRIOR BAD ACTS

For her third allegation, Henry claims the trial court erred in denying her motion in limine to exclude evidence of three prior drug sales involving Henry's husband and two sons. One of the sales occurred in June 1989, several miles from the Henry residence, and the other two sales, according to Investigator Linda Law, occurred on June 9, 1990; one in an oil field near the Henry home and the other at the residence itself. All three incidents occurred within the time frame specified in the criminal information filed against Henry. The 1990 sales occurred only two months before undercover officers filmed Henry taking money from her husband, following a sale outside the Henry's home, on August 21, 1990.

Henry argues the sales prior to August 21, were inadmissible under A.R.E. Rule 404(b) as they were introduced simply to show Henry's family members "are bad persons," and because the evidence was irrelevant and prejudical. We disagree.

The State's evidence at trial revealed that police had been investigating Henry's husband, Jeffro Henry, for several years. In a search following the drug sales in June 1990, police discovered large amounts of cash in Mrs. Henry's purse. In a search of the home following the undercover sale in August, the police again found large amounts of money in Mrs. Henry's purse and in a bank bag she had in her possession. The latter search was prompted by a videotape of Mr. Henry making a sale outside his home, shortly after which Mrs. Henry was filmed taking from

Mr. Henry, money he had just received from the undercover buyer. Large amounts of unexplained deposits, beginning in June 1990, were made by the Henrys to various accounts in different banks. The couple's financial ledgers were controlled by Mrs. Henry. In statements to the police, Mr. Henry indicated that, during the period from June 1989 to August 1990, he would put the money he received from cocaine sales in his wife's purse.

■ We have had little occasion to consider questions of admissibility of evidence under A.R.E. Rule 404(b) in conspiracy cases, as charges of this nature are usually prosecuted at the federal level. Federal courts have commonly held that where evidence of other crimes is offered in a conspiracy case, the proof is not inadmissible under federal Rule 404(b) (which is identical to our Rule 404(b)), since it is not evidence of an "other crime," but rather "is offered as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused." 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5239 at 450 (1978). This reasoning is persuasive.

The State's case against Henry was premised on the occurrence of regular drug sales by members of Henry's family, from which Henry knowingly took and managed the illegal monies. Testimony regarding the sales in 1989 and 1990 were admissible as evidence of that conspiracy. Furthermore, federal courts have consistently held that other acts of the conspirators, though they may have occurred prior to the defendant's actual entry into the conspiracy or to the dates charged in the information, are admissible as bearing on the existence and purpose of the conspiracy charged. *See United States* v. *Bates*, 600 F.2d 505 (1979); *United States* v. *Aguiree Aguirre*, 716 F.2d 293 (5th Cir. 1983); *United States* v. *Garbett*, 867 F.2d 1132 (8th Cir. 1989).

■■ If we analyze general principles of admissibility under our Rule 404(b), we note that evidence of other crimes will be admitted if 1) it has independent relevance, and 2) its relevance is not substantially outweighed by the danger of unfair prejudice. *Price* v. *State*, 268 Ark. 535, 597 S.W.2d 598 (1980). As to whether the evidence is independently relevant, it must be relevant in the sense of tending to prove some material point rather than merely trying to prove the defendant is a criminal.

*Carter* v. *State*, 295 Ark. 218, 748 S.W.2d 127 (1988). Whether the probative value outweighs the prejudice is a matter left to the sound discretion of the trial judge. *Beebe* v. *State*, 301 Ark. 430, 784 S.W.2d 765 (1990).

Again, the evidence of prior drug sales by other members of Henry's family was relevant to show there was in fact an ongoing drug operation and that Henry was part of that operation. Evidence of a conspiracy may be shown by circumstantial evidence, without direct proof of a prior agreement. *See King* v. *State*, 271 Ark. 417, 609 S.W.2d 32 (1980). As to potential prejudice, Professors Wright and Graham have suggested that proof of conduct of third persons does not normally support a strong inference of bad character of the accused. "The jury might infer that the defendant has a bad character by virtue of his association with his co-conspirators, but the prejudice is usually less than in cases where it is the defendant's own acts that are proved." *Federal Practice and Procedure* § 5239 at 451, *supra.*

Under either analysis, we do not find the admissions of the prior drug transactions constituted reversible error.

## IV. SEVERANCE

Henry next contends the trial court erred in denying her motion to sever the three charges filed against her: delivery of cocaine, possession with intent to deliver, and conspiracy to deliver cocaine. The trial court allowed the charges to be tried together under Ark. R. Crim. P. 22.2, as they constituted a single plan or scheme.

We will affirm a trial court's denial of a motion to sever if the offenses at issue were part of a single scheme or plan or if the same body of evidence would be offered to prove each offense. *Brown* v. *State*, 304 Ark. 98, 800 S.W.2d 424 (1990). The State's theory was that, over a fourteen-month period, Henry had conspired with members of her family to sell cocaine. That conspiracy ended on the date she was arrested for possession with intent to deliver, and delivery. The same evidence and witnesses were necessary to prove each of the three charges.

The decision to sever offenses is, again, discretionary with the trial court, *see Ferrell* v. *State*, 305 Ark. 511, 810 S.W.2d 29 (1991), and we find no abuse of that discretion here.

## V. MISTRIAL

For her fifth point of error, Henry argues the trial court erred in denying her motion for a mistrial based on testimony given by State's witness Chief Deputy Robert Gorum. Chief Deputy Gorum testified that he had received information concerning Henry's husband, Jeffro Henry, since 1985, and that he had been investigating Mr. Henry for a long period of time.

Following this testimony, counsel approached the bench and Henry's attorney requested a mistrial as the testimony mentioned events occurring before the dates listed in the information. The trial court denied the motion but offered to instruct the jury that the time frame at issue began in June 1989. Henry's counsel declined the offer and did not move to strike the testimony. Furthermore, Henry has not demonstrated how she was prejudiced by the ruling. Under such circumstances, we cannot say the trial court erred in denying the motion for a mistrial. *See Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988); *Birchett* v. *State*, 294 Ark. 176, 741 S.W.2d 267 (1987).

## VI. SUBSTANTIAL EVIDENCE

In her next four arguments for reversal, Henry claims the State failed to prove, beyond a reasonable doubt, that she was an accomplice to the drug sales made by Jeffro Henry; that she possessed cocaine; that she delivered cocaine; and that she conspired with Jeffro Henry to commit the crimes with which she was charged. These arguments constitute challenges to the sufficiency of the evidence; however, we cannot consider them as the issues were not preserved for appellate review.

Henry moved for a directed verdict based on insufficiency of the evidence at the close of the State's case but failed to renew the motion at the end of all the evidence, as required by Ark. R. Crim. P. 36.21(b). The rule is strictly construed and, therefore, we cannot consider Henry's arguments. *See Collins* v. *State*, 308 Ark. 536, 826 S.W.2d 231 (1992); *Cole* v. *State*, 307 Ark. 41, 818 S.W.2d 573 (1991).

## VII. CLOSING ARGUMENT

Lastly, Henry maintains the trial court erred in overruling her objection to a statement made by the prosecutor during

closing arguments. The prosecuting attorney compared Henry to Jim Baker, ". . . .doing one thing public, and in the background what was he doing? Spending zillions of dollars. That's what you got here. Think about that folks."

The trial court noted that the jury had been instructed to "use their common knowledge" and "that the argument of counsel is not evidence." The court concluded that the jury could "consider and listen to argument and determine that it should be disregarded." We agree. Although the prosecutor's reference to the television evangelist may have been improper, it was not the type of commentary on matters or evidence outside the record with which we are usually concerned in closing arguments. *See Williams* v. *State*, 294 Ark. 345, 742 S.W.2d 932 (1988); *Foster* v. *State*, 294 Ark. 146, 741 S.W.2d 251 (1987); *Jeffers* v. *State*, 280 Ark. 458, 658 S.W.2d 869 (1983). Moreover, the jury was properly instructed that "closing remarks of the attorneys are not evidence. . ." and that "any argument, statements, or remarks of attorneys having no basis in the evidence should be disregarded by you." This was sufficient to overcome any prejudice to Henry that may have resulted from the prosecutor's remarks. *See Jeffers* v. *State, supra.*

For the foregoing reasons, the verdict and sentence are affirmed.