David FERRELL *v.* STATE of Arkansas

CR 95-1243                                929 S.W.2d 697

Supreme Court of Arkansas
Opinion delivered September 16, 1996

*Daniel D. Becker,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Brad Newman,* Asst. Att'y Gen., for appellee.

BRADLEY D. JESSON, Chief Justice. David Ferrell was convicted of capital murder and sentenced to life without parole. He raises seven issues on appeal, none of which have merit. We therefore affirm his conviction.

The issue that must be addressed prior to all others is Ferrell's claim that the evidence was not sufficient to support his conviction. *See Passley v. State,* 323 Ark. 301, 915 S.W.2d 248 (1996). This requires a detailed recitation of the facts presented at trial. On January 14, 1994, Paul Loyd, a resident of Hot Springs, was reported missing. He was last seen on his way to meet with Ferrell (his roommate), and a man named Wayne Hortman. According to Loyd's brother, who filed the missing person report, Loyd was meeting with Ferrell and Hortman for the purpose of trading his motorcycle to them in exchange for drugs.

The Hot Springs Police Department opened a file on Loyd's disappearance but there was no significant activity on the case for a number of weeks. However, in March of 1994, Wayne Hortman was being questioned by the police on a matter unrelated to the Loyd case. Hortman was often in trouble with the law and routinely provided information in exchange for lenient treatment. On this occasion, he told the officers that he was visiting Ferrell about two weeks after Loyd's disappearance when Ferrell handed him an SKS semi-automatic rifle and told him to "do something with it." Hortman took the gun home and put it in his garage. Some weeks later, Ferrell noticed the gun in Hortman's garage and became angry that Hortman had not gotten rid of it. Ferrell tried to destroy the gun by slamming it against a tree. When that proved unsuccessful, he went with Hortman to the Highway 270 bridge over Lake Hamilton and threw the gun into the water. During that same time period, the Bureau of Alcohol, Tobacco and Firearms was investigating Ferrell on a matter unconnected with Loyd's disappearance.

In the course of the investigation, Agent Glen Cook discovered that, in March of 1993, Ferrell had purchased an SKS rifle bearing the serial number 2401610.

Based upon the foregoing information, divers searched Lake Hamilton in hopes of finding the gun. In April of 1994, an SKS rifle with serial number 2401610 was recovered from the lake. A few weeks later, on June 1, 1994, a couple walking in a wooded area of Hot Spring County came across a piece of tape attached to a tree. Written on the tape were the words, "pack all rats together." A short time thereafter, they saw what appeared to be a skeleton with bits of shredded clothing around it. In fact, it was a partially decomposed human body. Investigators were called to the scene and recovered several items of clothing, including a belt with the name "Paul" on the back. They also recovered two bullet fragments and four shell casings. The medical examiner, through the use of dental records, identified the remains as those of Paul Loyd.

Loyd's death was treated as a homicide and Ferrell and Hortman were charged with capital murder. At trial, the State presented, in addition to the above mentioned evidence, the testimony of five witnesses who said that Ferrell had confessed to shooting Loyd. Other witnesses testified that Ferrell strongly suspected Loyd of being an undercover narcotics officer. Medical examiner Dr. Charles Kokes testified that, due to the decomposition of the body, he could not conclusively determine the cause of death. However, he observed that nothing about Loyd's wounds was inconsistent with death by gunshot. He further stated that three small holes in the back of the jacket and shirt Loyd had been wearing were consistent with bullet entry. An expert from the State Crime Lab found traces of lead around the holes in the jacket and shirt which indicated bullet entry. Firearms expert Joseph Mason testified that he could conclusively match three of the shell casings found at the scene to Ferrell's SKS rifle. He was unable to make a conclusive match of the bullet fragments, but he said that the bullets came from the same type of weapon as the SKS.

At the close of the State's case, and again at the close of all evidence, Ferrell moved for a directed verdict on the grounds that the proof was insufficient to establish that a homicide occurred and insufficient to connect him to the crime. A directed verdict is a challenge to the sufficiency of the evidence. *Jacobs* v. *State*, 317 Ark. 454, 878 S.W.2d 734 (1994). On appeal, our task is to determine

whether the verdict is supported by substantial evidence. Substantial evidence is that which is forceful enough to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Drummond* v. *State*, 320 Ark. 385, 897 S.W.2d 553 (1995). We review the evidence in a light most favorable to the appellee and consider only that evidence which supports the verdict. *Williams* v. *State*, 321 Ark. 635, 906 S.W.2d 677 (1995).

■ Ferrell argues that the case against him was based largely on his confessions to third persons and that these confessions were not corroborated by evidence that a homicide occurred. Ferrell is referring to the *corpus delicti* rule which requires the State to prove, independent of a confession, the following two elements: 1) an injury or harm constituting the crime, and 2) that the injury or harm was caused by someone's criminal activity. *Hart* v. *State*, 301 Ark. 200, 783 S.W.2d 40 (1990). See also Ark. Code Ann. § 16-89-111(d) (1987). In a murder case, this means that the State must prove the deceased came to his death at the hands of another person. *Weaver* v. *State*, 324 Ark. 290, 920 S.W.2d 491 (1996). There is substantial evidence in this case, independent of Ferrell's confessions, that Loyd met his death through an act of homicide. The three holes in Loyd's shirt and jacket consistent with bullet entry; the lead traces around the holes; the bullet fragments and shell casings found at the scene; the discovery of Ferrell's gun in Lake Hamilton; the matching of the shell casings with Ferrell's gun; and the opinion of the medical examiner, all point to death by gunshot. We hold that the State has sustained its burden of proof.

■■ We turn now to Ferrell's allegations of error during the *voir dire* process. First, he argues that the trial judge should have granted his motion to conduct individual sequestered *voir dire*. The extent and scope of *voir dire* is left to the sound discretion of the trial judge and the trial judge's ruling will not be disturbed on appeal, absent an abuse of discretion. *Henry* v. *State*, 309 Ark. 1, 828 S.W.2d 346 (1992). At trial, Ferrell based his motion on a fear that the panel would be tainted by hearing his questions to other venirepersons regarding their attitudes toward the death penalty. However, he does not make this argument on appeal, and for good reason. He did not receive the death penalty, so the basis for that argument is moot. Instead, he claims prejudice because a potential juror became emotionally upset during the *voir dire* process. We decline to address this argument because Ferrell did not present it to the trial court as

a basis for his motion. A party cannot change his argument on appeal. Even in a case in which a sentence of life without parole has been imposed, the appellant is bound by the scope of the argument he made at the trial level. *Pike* v. *State*, 323 Ark. 56, 912 S.W.2d 431 (1996).

Ferrell's second claim that error occurred during *voir dire* concerns the trial judge's failure to excuse four jurors for cause. We will not address his argument as it pertains to venirepersons Bultena, Efrid, and Passette. Those potential jurors were excused by Ferrell through the use of peremptory challenges. The loss of peremptory challenges cannot be reviewed on appeal. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). The only claim available to Ferrell concerns venirewoman Puckett, who actually sat on the jury after she was challenged for cause. *See Kemp* v. *State*, 324 Ark. 178, 919 S.W.2d 943 (1996). During *voir dire*, Ms. Puckett was questioned by the defense regarding her views on the death penalty. Her answers were somewhat inconsistent and, in an attempt to pin her down, counsel's questions became rather pointed. Ms. Puckett became upset and began to cry. Ferrell moved to strike her for cause. The trial judge questioned Ms. Puckett regarding the matter and she explained that she was not angry but "didn't want to be talked to like that." The motion to strike was denied, with the judge finding that the *voir dire* questions were confusing to Ms. Puckett and that she was an intelligent juror who had served well in the past.

A trial court's refusal to strike a juror for cause will not be reversed absent an abuse of discretion. *Nooner* v. *State*, 322 Ark. 87, 907 S.W.2d 677 (1995). A juror is presumed unbiased and qualified and it is the appellant's burden to prove otherwise. *Kemp* v. *State, supra.* The sole basis upon which Ferrell challenged Ms. Puckett was the fact that she became emotionally upset during *voir dire*. A reading of the record shows that Ms. Puckett was not hysterical or angry. The trial judge, who was in the best position to observe her demeanor, found that she was simply confused by the questioning. Under these circumstances we find no abuse of discretion in allowing Ms. Puckett to sit on the jury.

The next argument we address concerns the manner in which Ferrell was charged in the information. The State alleged that Ferrell had committed capital murder by either of two alternative means: 1) in the course of and in furtherance of a robbery, and 2) with premeditation and deliberation. Prior to trial, Ferrell asked

the court to require the State to elect between the two methods. His argument was that he would be forced to develop a "two-pronged" defense. On appeal, his argument has changed. He now claims that there was insufficient evidence to support the theory that the murder occurred during the course of a robbery. Once again, we decline to address an argument which was not made to the trial court. *See Pike* v. *State, supra*. The record does not reveal that Ferrell presented this argument to the court as a basis for his motion, nor did he move to direct a verdict on that aspect of capital murder, nor did he object to the jury instruction which allowed the jury to consider that theory.

■ The remaining issues involve evidentiary rulings by the court. Ferrell objected on the ground of hearsay to the medical examiner's use of dental records to identify Loyd's body. The medical examiner explained that use of such records was a common and medically accepted way of identifying human remains. The trial judge allowed the evidence. We do not reverse a trial judge's ruling on a hearsay question absent an abuse of discretion, *Bowen* v. *State*, 322 Ark. 483, 911 S.W.2d 555 (1995), and we find no abuse of discretion here. Facts or data relied upon by an expert need not be admissible in evidence if they are of a type reasonably relied on by experts in the particular field. *See* A.R.E. Rule 703. In *Scott* v. *State*, 318 Ark. 747, 888 S.W.2d 628 (1994), a medical examiner relied on a neurosurgeon's report in forming his opinion. The appellant made a hearsay objection. We held that, while a jury may choose to give less weight to an expert's opinion formed in reliance on outside data, the expert's opinion is not rendered inadmissible by reliance on such data.

Next, Ferrell argues that the trial court should have granted a continuance when, on the fifth day of trial, Wayne Hortman unexpectedly took the stand as a State's witness. The day before, the State had said that Hortman would assert his rights under the Fifth Amendment if he was called to testify. However, the State subsequently entered into a plea bargain with Hortman, reducing the charges against him to hindering apprehension. In exchange, Hortman offered his testimony against Ferrell.

■ It is the movant's burden to show good cause for a continuance. *Verdict* v. *State*, 315 Ark. 436, 868 S.W.2d 443 (1993). A trial court's denial of a continuance will not be overturned absent an abuse of discretion. *Oliver* v. *State*, 312 Ark. 466, 851 S.W.2d 415

(1993). We find no abuse of discretion here. Hortman was on the State's witness list and Ferrell had been provided with a copy of Hortman's previous statements. Ferrell should have been prepared for the possibility that Hortman would testify. In any event, Ferrell was able to conduct an effective cross-examination of Hortman, impugning his credibility with the fact that he had plea bargained in exchange for his testimony, that he had numerous prior convictions, that he had a history as a drug addict, and that there were inconsistencies in his previous statements. During the cross-examination, the court allowed a fifteen-minute recess for additional preparation. Under the circumstances, Ferrell simply cannot show that he was prejudiced by the court's ruling. He does not say, with any degree of specificity, what he would have done differently had a continuance been granted. *See Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1995).

Finally, Ferrell claims that there were two instances during trial in which the prosecutor made an improper comment on his right to remain silent. During voir dire, the State was posing general questions to the panel in an attempt to explain trial procedure. The following statement was made:

> After opening statements, the State, because it has the burden of proof, is required to proceed with its case first. The state will call its witnesses, put on its evidence, and at the close of all evidence on behalf of the state, the defense may or may not call witnesses.

Ferrell objected to the statement that the defense may or may not call witnesses on the ground that it was "improper." He asked for a mistrial, which the trial judge denied. A mistrial is a drastic remedy that should be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial or where any possible prejudice cannot be removed by admonishing the jury or some other curative relief. *Wilkins v. State*, 324 Ark. 60, 918 S.W.2d 702 (1996). The prosecutor's comment in this instance does not merit a mistrial. It is not an attempt to impeach Ferrell by reference to his post-arrest silence, as prohibited by *Doyle v. Ohio*, 426 U.S. 610 (1976). The same can be said for the prosecutor's remark during opening statement that Ferrell "talked from time to time with various law enforcement officers and always had a different story. . . ."

Ferrell also contends that a State's witness made a comment which warranted a mistrial. During ATF Agent Glen Cook's testimony, he was discussing a statement Ferrell had given him. The following took place:

Q. During your interview with Mr. Ferrell, did his expressions change or did he make any expressions to you during any portion of the statement?

A. At the conclusion of the interview, which is this last paragraph, when he stated that when he returned home, Loyd was gone, he started smiling.

Q. Had he been smiling at any time prior to that during the interview?

A. One other incident when — where he refused to make a statement —

At that point, Ferrell asked for a mistrial, which the trial judge denied. Even if Cook's comment is construed as a reference to Ferrell's post-arrest silence, the reference was inadvertently elicited while Cook was attempting to explain Ferrell's demeanor, and the prosecution did not dwell on the reference. Under such circumstances, we will not reverse a trial court's decision to deny a mistrial. *Dansby* v. *State*, 319 Ark. 506, 893 S.W.2d 331 (1995); *Tarkington* v. *State*, 313 Ark. 399, 855 S.W.2d 306 (1993).

In accordance with Arkansas Supreme Court Rule 4-3(h), the record of the trial has been examined for rulings adverse to the defendant on objections, motions, and requests by either party, and we find no reversible error.

Affirmed.