Larry RAYFORD *v.* STATE of Arkansas

CR 96-428                                          934 S.W.2d 496

Supreme Court of Arkansas
Opinion delivered November 25, 1996

*John F. Gibson, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Joseph v. Svoboda*, Asst. Att'y Gen., for appellee.

BRADLEY D. JESSON, Chief Justice. On October 31, 1992, the partially nude body of Christopher Lyle Bailey, a.k.a. Jay Smith, was found face down in a ditch just off Highway 189 in Ashley County. A piece of paper bearing the name and telephone number of one of appellant Larry Rayford's former girlfriends was discovered in the pocket of the victim's jeans, which were positioned around his ankles. Rayford was later arrested and convicted of capital murder and sentenced to life without parole. His sole argument for reversal is that the trial court erred in denying his motion for new trial on the basis that the State had failed to abide by the rules of discovery. We affirm.

Because Rayford does not challenge the sufficiency of the evidence, it is only necessary for us to recite the facts relevant to his motion for new trial. Rayford initially denied any involvement in the killing. He later admitted to causing the victim's death, but gave several conflicting statements to police regarding how and where the shooting took place. He gave two, somewhat conflicting statements to Captain Charles Cater of the Monticello Police Department and Investigator Garland McAnally of the Arkansas State Police that he had shot the victim in Ashley County after the victim had made unwanted sexual advances toward him. He later changed his story, testifying at a pretrial hearing that he had accidentally shot the victim in Drew County after he and the victim had been "fumbling around" with guns.

On December 28, 1993, the trial judge informed defense counsel that he had received a letter from Huey Zane Brooks, a fellow inmate of Rayford's at the Drew County Jail. The letter

related that Rayford had been bragging about killing a man. The trial judge gave a copy of Brooks's letter to Rayford's attorney and cautioned him to be ready for Brooks's testimony, which, if relevant and material, would not be limited to the contents of his letter. The following day and approximately two weeks prior to Rayford's trial, the prosecutor informed Rayford's counsel that he intended to call Brooks as a witness.

On the morning of Rayford's January 18, 1994, trial, the prosecutor met with Brooks at the jail. According to Brooks, Rayford admitted that he and the victim had had words, that he had offered the victim some marijuana and a car ride, and that he had taken the victim out of Monticello, shot him, and dumped the body in some water. The prosecutor delivered a written summary of Brooks's verbal statement to defense counsel's office, which was located across the street from the jail. When the prosecutor referred to Brooks's anticipated testimony during his opening statement, Rayford's counsel objected on the basis that the State was proposing to offer a different account of Rayford's statement to Brooks than that which was previously disclosed in Brooks's letter. Following the trial judge's overruling of the objection, defense counsel stated that "[N]o harm's done."

When the State called Brooks as a witness, Rayford renewed his objection made during the State's opening statement, adding that he had not received the prosecutor's note in time for him to adequately prepare for trial. While Rayford's motion for new trial indicates to the contrary, defense counsel told the trial judge that he had spoken to Brooks, who had told him that Rayford's statement was made in the presence of other inmates. Brooks was permitted to testify, and, after the State rested, the trial judge offered an early adjournment so that defense counsel could interview the other inmates. During his case-in-chief, Rayford presented the testimony of inmate Ricky Joe Gray, who disputed Brooks's testimony.

■ Rule 17.1(a)(ii) of the Arkansas Rules of Criminal Procedure mandates that the prosecutor disclose, upon timely request, "any written or recorded statements and the substance of any oral statements made by the defendant or a co-defendant." Rule 19.2 imposes a continuing duty on the prosecutor to disclose this information. In the event of noncompliance, Rule 19.7 allows the trial judge to order the undisclosed evidence excluded, grant a continuance, or enter such an order as he or she deems proper under the

circumstances. The key in determining whether a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. *Bray* v. *State*, 322 Ark. 178, 908 S.W.2d 88 (1995).

■■ When examining the facts in this case, we disagree with Rayford's contention that they demonstrate a violation of the rules of discovery, as the trial judge went to great lengths to insure their compliance. The trial judge provided Rayford with a copy of Brooks's letter and expressly warned defense counsel that he "needed to be ready" for Brooks's testimony that Rayford had been bragging about killing a man. At this point, Rayford should have been prepared for the possibility that Brooks would testify. *See Ferrell* v. *State*, 325 Ark. 455, 929 S.W. 2d 697 (1996). The day after defense counsel received Brooks's letter, the prosecutor announced that he would call Brooks as a witness. Once Rayford knew that Brooks would be a witness, his counsel had the right and duty, time permitting, to conduct his own investigation, interview Brooks, and perhaps discover what Brooks would say at trial. *See Henry* v. *State*, 278 Ark. 478, 647 S.W.2d 419 (1983), *cert. denied*, 464 U.S. 835 (1983). As to the verbal statement the prosecutor obtained from Brooks on the morning of trial, the record indicates that he delivered a written summary of Brooks's statement to defense counsel's office before trial. As the prosecutor and defense counsel found out about Brooks statement at approximately the same time, and there is no evidence that the prosecutor deliberately avoided obtaining this information in order to have it presented at trial, we must conclude that the prosecutor satisfied his continuing duty to disclose.

■ Even if we were to conclude that the State had improperly failed to provide Brooks's statement to the defense, we would affirm due to Rayford's failure to demonstrate prejudice. While appellant argues that the State had no proof of premeditation and deliberation in the absence of Brooks's testimony, we disagree. Dr. Frank Peretti of the State Crime Lab performed the autopsy on the victim and testified at trial that the victim's death was caused by a shotgun wound to the back and blunt-force head injuries. He observed at least six blunt-force head injuries and bruises and scrapes on the victim's face, indicating that he had been in an altercation prior to his death. The victim had black eyes that were the probable results of a fist fight. Dr. Peretti further observed some bruises on the victim's right arm and lower chest that were consis-

tent with being hit with the stock of a gun. Thus, the jury could have inferred premeditated and deliberate murder from the act itself, as they heard Dr. Peretti's testimony regarding the the nature and number of wounds to the victim's body, and were able to view photographs of these injuries as well. In light of this evidence and Rayford's conflicting accounts of how the shooting took place, the jury could have easily inferred, in the absence of Brooks's testimony, that Rayford's killing of the victim was a premeditated and deliberate act.

We also think it significant that Rayford's counsel commented, after his objection during opening statements, that no harm was done by the State's reference to Brooks's anticipated testimony. Indeed, the record shows that the trial judge gave Rayford time to interview the other inmates and that Rayford was able to present the testimony of inmate Ricky Joe Gray during his case. As Gray disputed Brooks's testimony, the similar testimony offered in the new-trial affidavits of inmates Dennis Caldwell, James Green, and Tommy Green, would be cumulative to Gray's testimony. As such, Rayford is unable to demonstrate that he was prejudiced by the trial court's denial of his motion for new trial.

We have reviewed the record pursuant to Ark. Sup. Ct. R. 4-3(h), and no prejudicial error has been found that would warrant reversal.

Affirmed.