Steven Scott BADER *v.* STATE of Arkansas

CR 00-565                                                    40 S.W.3d 738

Supreme Court of Arkansas
Opinion delivered March 22, 2001

affirmed.

*Brad Karren* and *Doug Norwood*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Leslie Fisken*, Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant, Steven Scott Bader, appeals the judgment of the Benton County Circuit Court, convicting him of murder in the first degree and sentencing

him to forty years' imprisonment in the Arkansas Department of Correction. Appellant raises three points for reversal: (1) the trial court erred in not allowing inquiry of the jury panel as to their religious denomination and the number of times that they attended a religious service each month, (2) the trial court erred in failing to find the Arkansas peremptory challenge statute, Ark. Code Ann. § 16-33-305 (Repl. 1999), facially unconstitutional, and (3) the trial court erred by not making an on-the-record determination of appellant's waiver of his right to testify. We find no error and affirm.

Appellant does not challenge the sufficiency of the evidence supporting his conviction. The evidence showed that he broke into the home of seventy-two-year-old Robert Sikes ("Sikes") on April 12, 1998, and beat him severely. The victim was hospitalized until his death on May 9, 1998. After Sikes's death, the State charged appellant and Diana Martens with murder in the first degree.

At a pretrial hearing on September 14, 1999, appellant notified the court that he wanted to submit a jury questionnaire pertaining to religion to the prospective jurors. The trial court declined to address appellant's intention to submit these questions because it thought the questions could be asked within the constraints of *voir dire*. Appellant then notified the trial court that he wished to strike prospective jurors based solely on their religious affiliation. The trial court responded to this argument by notifying appellant's counsel that he must provide legal authority in order to strike prospective jurors because of their religious beliefs.

Prior to jury selection on September 20, 1999, appellant again requested that the court permit him to strike jurors based on their religious beliefs. Appellant specifically requested that he be permitted to ask certain questions of the prospective jurors as to their (1) general religious classifications, such as whether they are Christian, Jewish, Muslim, Buddhist, or any of the other major religions, (2) denominational affiliations under those general religious classifications, such as whether they are Church of Christ, Lutheran, Presbyterian, etc., and (3) how many times in the average month that they attend any kind of religious services. Appellant stated that he should be permitted to use peremptory challenges to strike jurors based on religion because of the provisions of the First, Sixth, and Fourteenth Amendments to the United States Constitution. He further contended that the United States Supreme Court has not extended *Batson v. Kentucky*, 476 U.S. 79 (1986) and *J.E.B. v. Alabama*, 511 U.S. 127 (1994) to include any classifications other than race and gender. The trial court ruled that the proposed questions relating to

religious affiliation or practice could not be asked because they would violate the Arkansas Civil Rights Act of 1993, as codified at Ark. Code Ann. §§ 16-123-101—16-123-210 (Supp. 1999), or, more specifically, Ark. Code Ann. §§ 16-123-102(8) (Supp. 1999) & 16-123-107(a) (Supp. 1999). The trial court went on to state the following:

> And so you will not be allowed to utilize a peremptory challenge strictly on the basis of religion ... but that does not in any way prohibit you from inquiring, either side, from inquiring as to whether anyone possesses religious beliefs or convictions or philosophical ideas so strong that they would interfere with their ability to follow the [c]ourt's instructions, follow the law and objectively consider the evidence and rule as the evidence dictates.

Appellant had also filed a pretrial motion on September 16, 1999, asking the trial court to disallow all peremptory strikes and to hold the Arkansas peremptory challenge statute, Ark. Code Ann. § 16-33-305, unconstitutional on the grounds that the statute allows both sides to strike jurors for unlawful reasons. At the pretrial status hearing on September 17, 1999, the trial court denied appellant's motion, finding that peremptory challenges have been historically accepted in Arkansas and every state in the United States. The trial court noted that safeguards against unlawful peremptory challenges were established in *Batson v. Kentucky, supra*. The trial court further stated the following: "[T]he safeguards that have been put in place, the *Batson* rule and analysis to avoid discrimination ... ha[ve] later been extended as much as possible to cover gender discrimination, I think those are sufficient safeguards and clear up ... to some extent the abuses you are talking about."

Following the trial court's ruling that *voir dire* examination of jurors would be limited to inquiry as to whether any of the jurors possessed religious beliefs, convictions, or philosophical ideas so strong that they would interfere with their ability to follow the court's instructions, follow the law, and objectively consider the evidence and rule as the evidence dictates, the State used four, and appellant used seven, peremptory strikes to eliminate jurors. There is no indication in the briefs that any of these strikes were used for any particular reason. In addition, no jurors were stricken for cause. Finally, there is no indication in the briefs that either appellant's counsel or the prosecution objected to the make-up of the jury.

*I. The trial court did not abuse its discretion by
limiting voir dire.*

For his first argument on appeal, appellant contends that the trial court erred in not allowing inquiry of the jury panel on *voir dire* as to their religious classification, denomination, and number of times that they attend a religious service each month. Appellant asserts that the trial court's ruling restricting his *voir dire* in this manner constituted reversible error. We disagree.

We have held that the extent and scope of *voir dire* is left to the sound discretion of the trial court and that the trial court's ruling will not be disturbed on appeal, absent an abuse of discretion. *E.g., Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998) (citing *Ferrell v. State*, 325 Ark. 455, 929 S.W.2d 697 (1996)). For example, in *Henry v. State*, 309 Ark. 1, 828 S.W.2d 346 (1992), we held that there is no abuse of discretion when the trial court curtails protracted *voir dire* examination, or restricts questions that do not touch upon the qualifications of venirepersons to serve as impartial jurors, or that are potentially confusing to the prospective jurors. In addition, when we have upheld *voir dire* limitations, we have held that we do not find the questions so plainly appropriate that we are prepared to say the trial court's discretion was abused. *Roderick v. State*, 288 Ark. 360, 705 S.W.2d 433 (1986) (citing *Sanders v. State*, 278 Ark. 420, 646 S.W.2d 14 (1983)).

In this case, the questions regarding religious preferences that appellant was seeking to ask were not so plainly appropriate that we should say the trial court's discretion was abused. While the desired questions were not submitted by written proffer, the abstract shows that appellant was seeking specific information concerning each juror's (1) general religious classifications, such as whether they are Christian, Jewish, Muslim, Buddhist, or any other of the major religions, (2) denominational affiliations under those general religious classifications, such as whether they are Church of Christ, Lutheran, Presbyterian, etc., and (3) how many times in the average month the venireperson attends any kind of religious service. The purpose of the proposed *voir dire* was, according to appellant's brief, to use peremptory strikes to remove venirepersons that appellant considered to be too religious.

We note that there are prohibitions against using religious tests as a qualification for holding office, voting, or exercising the rights of a citizen to participate fully in the instrumentalities of

government. The principles of religious freedom and the prohibition against religious discrimination are well-grounded in this country. The United States Constitution states that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." U.S. Const. art. 6. This principle is similarly articulated in Article II, Section 26, of the Arkansas Constitution, which provides that "[n]o religious test shall ever be required of any person as a qualification to vote or hold office, nor shall any person be rendered incompetent to be a witness on account of his religious belief; but nothing herein shall be construed to dispense with oaths or affirmations." *Id.*

██ The principle that there is a prohibition against discrimination based on religious beliefs existed long before the *Batson* decision was handed down in 1986, and, indeed, existed long before Arkansas adopted the Arkansas Civil Rights Act of 1993,[1] the statute upon which the trial court relied. The principle is well established that a trial court does not abuse its discretion in limiting the scope of *voir dire* examinations to questions addressing whether the venireperson would be qualified to serve as an impartial juror. *Henry, supra.* Here the trial court permitted an alternative line of questioning that was designed to educe information as to whether the venireperson had personal religious beliefs, convictions, or philosophical ideas that would impair his ability to serve as an impartial venireperson, and we note that appellant did not choose to inquire

---

[1] The particular statutes the trial court invoked were Ark. Code Ann. § 16-123-102(8) and Ark. Code Ann. § 16-123-107(a). Ark. Code Ann. § 16-123-102(8) provides, in relevant part:

For the purposes of this subchapter:

(8) "Religion" means all aspects of religious belief, observance, and practice.

*Id.* Ark. Code Ann. § 16-123-107(a) provides, in relevant part:

(a) The right of an otherwise qualified person to be free from discrimination because of race, religion, national origin, gender, or the presence of any sensory, mental, or physical disability is recognized as and declared to be a civil right. This right shall include, but not be limited to:

(1) The right to obtain and hold employment without discrimination;

(2) The right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement;

(3) The right to engage in property transactions without discrimination;

(4) the right to engage in credit and other contractual transactions without discrimination; and

(5) The right to vote and participate fully in the political process.

*Id.*

using the permitted alternative line of questioning. We conclude that trial court did not abuse its discretion in limiting the scope of the *voir dire* examination in this case to questions addressing whether the venireperson's personal religious beliefs, convictions, or philosophical ideas would prevent the venireperson from following the law upon the instructions of the court. The trial court clearly did not interpret Ark. Code Ann. §§ 16-123-102(8) and 16-123-107(a) as preventing any general inquiry as to the ability of venirepersons to follow the law.

We conclude that the trial court's limitation on questions regarding religious beliefs was not an abuse of discretion. The trial court was well within its discretion in limiting appellant's use of religious questions that would range far beyond those needed to evaluate the qualifications of venirepersons to serve as impartial jurors. Certainly appellant's proposed questions were not "plainly appropriate" under *Roderick, supra*. Accordingly, the trial court's ruling is affirmed.

## II. Appellant is barred from challenging the constitutionality of the peremptory statute because he did not demonstrate prejudice.

For his second assignment of error, appellant argues that the trial court erred in failing to find that the Arkansas peremptory challenge statute, Ark. Code Ann. § 16-33-305, is unconstitutional. Specifically, appellant argues that the Arkansas peremptory challenge statute violates the Sixth Amendment right to an impartial jury and fair cross-section of the community and, alternatively, the Fourteenth Amendment right to equal protection.

■ It is well settled that in order to have standing to challenge the constitutionality of a statute, a person must show that the challenged statute had a prejudicial impact on him. *E.g., Brooks v. State*, 328 Ark. 32, 941 S.W.2d 409 (1997); *Garrigus v. State*, 321 Ark. 222, 901 S.W.2d 12 (1995).

For example, in *Brooks, supra*, we held that appellant did not have standing to challenge the constitutionality of Ark. Code Ann. § 16-97-103 (Supp. 1999) because he could not demonstrate a prejudicial impact from the application of that statute, which provides for victim-impact evidence to be admissible during the sentencing phase of bifurcated trials, because the State did not introduce any victim-impact evidence.

Similarly, in *Garrigus, supra,* we held that appellant did not have standing to challenge the constitutionality of Ark. Code Ann. § 5-65-310 (Repl. 1997, Supp. 1999) because he could not demonstrate a prejudicial impact from the application of that statute, which prescribes various penalties for the refusal of an underage person arrested for DUI to submit to a chemical test based on whether the arrestee is a resident or nonresident of the state and whether he has a valid driver's license, because he voluntarily submitted to a breathalyzer, and, thus, there was no finding that he violated the statute.

■ Appellant did not demonstrate how the application of the peremptory-strike statute had a prejudicial impact upon appellant or upon any juror in the case. Indeed, there is no indication in the briefs of the reasons why either appellant or the State struck jurors. Because appellant did not demonstrate that the peremptory challenge statute had a prejudicial impact on either him or on any stricken juror, it thus follows that appellant lacks standing to raise the issue on appeal and we decline to reach the merits of the constitutional challenge.

### III. Appellant failed to preserve for review his argument that the trial court erred by not determining whether he waived his right to testify.

For his third argument on appeal, appellant asserts for the first time that the trial court erred by not determining through an on-the-record colloquy as to whether appellant knowingly and voluntarily waived his right to testify. We note from the abstract that appellant did not seek to testify. Because appellant did not make his argument that he had not waived his right to testify to the trial court, we do not reach it here.

■ Our contemporaneous-objection rule requires objection at the trial level in order to preserve an argument for appeal. *Smith v. State,* 310 Ark. 30, 832 S.W.2d 497 (1992); *Miller v. State,* 309 Ark. 117, 827 S.W.2d 149 (1992). We have also consistently held that the contemporaneous-objection rule applies, even with respect to the denial of constitutional rights. *Moore v. State,* 303 Ark. 514, 798 S.W.2d 87 (1990); *Smith v. State,* 296 Ark. 451, 757 S.W.2d 554 (1988).

In making the argument that he is not barred from raising this issue on appeal, appellant relies on *Calnan v. State,* 310 Ark. 744,

841 S.W.2d 593 (1992) as authority for the proposition that the contemporaneous-objection rule does not apply in this case. In *Calnan, supra,* we outlined four exceptions to the contemporaneous-objection rule.[2] In *Calnan, supra,* we applied the exception that there is no need for there to have been a contemporaneous objection at the trial level in order to raise an issue on appeal if a serious error will otherwise result. *Id.* Appellant relies on this exception as being applicable to the present case. However, appellant's reliance on this case is misplaced.

While it is true that *Calnan* applied the *Wicks* exception under *Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980) that there is no need for a contemporaneous objection to raise an issue on appeal if a serious error will otherwise result, *Calnan* is clearly distinguishable from the present case. *Calnan* involved a different issue than the present case, namely the denial of the right to jury trial. In *Calnan, supra,* appellant was tried in municipal court and found guilty of DWI, disorderly conduct, violation of the implied-consent law, and speeding. *Id.* She appealed to the circuit court and was found guilty of all charges but speeding in a *de novo* bench trial. *Id.* This conviction by a bench trial had the effect of depriving Calnan of her right to a jury trial. *Id.* The appellant in *Calnan, supra,* claimed that she did not waive her right to a trial by jury, whereas in the case before us, appellant does not contend that he did not waive his right to testify, but, rather, argues that his waiver was not documented through a colloquy on the record. Therefore, Calnan is not applicable to the present case for the proposition for which appellant asserts it.

■ Appellant did not make a contemporaneous objection at trial as to the issue of appellant's waiver of the right to testify. Accordingly, we are precluded from addressing this argument on appeal.

The judgment of conviction is affirmed.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. Regarding Point I of the majority opinion, I concur and do so on the sole basis that the trial court permitted appellant Steven Bader an alternative line

---

[2] These four exceptions are usually referred to as the *Wicks* exceptions because they were first outlined in *Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980).

of questioning that was designed to educe information as to whether the venireperson had personal religious beliefs, convictions, or philosophical ideas that would impair his or her ability to serve impartially. Bader chose not to pursue such questioning. This court has held that the trial court's "limited restriction" on voir dire does not constitute an abuse of discretion. *See Ward v. State*, 308 Ark. 415, 827 S.W.2d 110 (1992).

Here, the trial court determined that specific information about denomination and church attendance was irrelevant for Bader to determine whether the potential jurors' religious beliefs would prohibit them from following the law. Only when proposed questions are "plainly appropriate" will this court conclude that the trial court abused its discretion by restricting voir dire. Mr. Bader failed to show how his proposed questions were plainly appropriate in the circumstances; thus, it cannot be said that the trial court abused its discretion in restricting his voir dire and by allowing Bader to offer a reasonable alternative line of questions.