Billy THESSING *v.* STATE of Arkansas

CR 05-420                                    230 S.W.3d 526

Supreme Court of Arkansas
Opinion delivered March 2, 2006
[Rehearing denied April 13, 2006.]

*William R. Simpson, Jr.*, Public Defender, *Brett Qualls*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen. and *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant Billy Thessing appeals from his judgment and commitment order for multiple offenses and his sentences, which include the death penalty. He raises nine points and requests that this court reverse his convictions and remand this case to the lower court or, in the alternative, that this court reverse his death sentence and remand for resentencing. We hold that his points are without merit, and we affirm the judgment and commitment order.

On February 17, 2003, Susan Basinger Sweet went to the home of her mother, Mattie Basinger, a sixty-seven year old cancer survivor. She discovered that Ms. Basinger's car was not there. She sent her son, Jeremiah, into the home first, but Susan and her children entered subsequently and found Ms. Basinger dead. They immediately went outside and called the Little Rock Police Department.

Takeisha Gilbert, a patrol officer for the department, was the first police officer to arrive at the scene. She observed blood throughout the house and found Ms. Basinger's body in the bedroom. The autopsy later revealed that Ms. Basinger had a total of six stab and cutting wounds on multiple parts of her body. She also received blunt force wounds to her head.

Two of the stab wounds were in her cheek region, which caused bleeding inside her mouth. The bleeding in her mouth caused her to aspirate blood into her trachea that subsequently went into her lungs. The medical examiner testified at trial that Ms. Basinger was alive when she received all these injuries. He concluded Ms. Basinger was alive and breathing in her own blood for ten to fifteen minutes before a blunt force trauma to her head caused her death.

On February 17, 2003, Pam McNew went to the Benton Police Department to talk to police officers after seeing a news report on television about Ms. Basinger's murder. She testified at trial that Thessing, a friend since childhood, came to her house late on the evening of February 11, 2003. She saw him in her yard when she returned from the store. He was burning trash in her front yard. They both went into her house, and he told her that he had killed someone earlier that evening. He then went back outside and brought in some groceries, a television set, vitamins, unfilled prescription slips, and a large Bible. Ms. McNew also told the authorities that the car he drove to her house was the car that belonged to Ms. Basinger. She later found Ms. Basinger's wheel-

chair in her shed. Police officers also found·silverware and credit cards on the premises which were taken from Ms. Basinger.

Ms. McNew further stated that Thessing had tried to convince her fiancé, who was also at her house, to go with him to burn down Ms. Basinger's home so he could try to make the murder look like an accident. At the ensuing trial, Ms. McNew testified that she, Thessing, and her fiancé used crack cocaine together that night. Although Ms. McNew did not believe Thessing at first, she later ordered him to leave her house, because she had a child and because she did not want to get in trouble herself. She stated that Thessing left in Ms. Basinger's car. The police officers came and recovered all the things Thessing had left at her home. Ms. McNew received a $400 reward for going to the police.

Also on February 17, 2003, Thessing wrecked Ms. Basinger's car and was arrested by a Benton police officer for public intoxication. Inside Ms. Basinger's car, police officers found a pair of boots with Ms. Basinger's blood on them. Additionally, police investigators found Thessing's fingerprints in Ms. Basinger's home.

On April 16, 2003, the prosecuting attorney filed a four-count information against Thessing, charging him with capital murder, residential burglary, and theft by receiving property valued in excess of $2500.00. The information further charged Thessing with misdemeanor theft by receiving property valued at less than $500.00. The information added that Thessing was a habitual offender with four or more prior felony convictions.

Before trial, Thessing moved for an order that he was incompetent to stand trial. He was later judged competent to stand trial at a pretrial hearing. He was tried and convicted of all four charges against him. He was sentenced to death for the capital murder charge.

### I. Competency to Stand Trial

Thessing first claims that the circuit judge erred in finding that he was competent to stand trial at the pretrial hearing. He points to the testimony of (1) Dr. Mary Wetherby, a psychologist, who stated that Thessing was not competent to stand trial because he had a psychotic disorder and was delusional; and (2) Dr. Bradley Diner, a psychiatrist, who testified that Thessing was not competent to stand trial because he suffered from a delusional disorder of the persecutory type. Thessing does add, however, that the State's

expert, who was a psychologist on the staff of the Arkansas State Hospital, Dr. Charles Mallory, testified that he was competent to stand trial and that he was not delusional but was malingering. Thessing also concedes that prior to trial he was extensively examined at the Arkansas State Hospital and that three reports prepared by doctors there concluded he was competent to stand trial.

During pretrial hearings and throughout his trial testimony, Thessing claims that he made statements that revealed the depth of his delusional disorder. For example, he says that he continuously referred to a satanic cult that was trying to harm him. According to Thessing, this satisfied his burden of proof because he placed before the circuit judge substantial evidence that he was not competent to stand trial.

We disagree with Thessing's contention on this point. This court has long held that criminal defendants are presumed to be competent to stand trial and that they have the burden of proving otherwise. *See, e.g., Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003); *Ware v. State*, 348 Ark. 181, 75 S.W.3d 165 (2002). This court has defined the test of competency to stand trial as "whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him." *Haynes v. State*, 346 Ark. 388, 392, 58 S.W.3d 336, 339 (2001). The test for competency on appeal is whether substantial evidence supports the trial court's finding. *See id.; see also Mauppin v. State*, 314 Ark. 566, 865 S.W.2d 270 (1993). We have defined substantial evidence as "that which is forceful enough to compel reasonable minds to reach a conclusion one way or another and requires more than mere speculation or conjecture." *Mauppin*, 314 Ark. at 568, 865 S.W.2d at 271. When determining whether there was substantial evidence to support a trial court's ruling regarding competency, this court has held that "[i]t is permissible to consider only the testimony which supports a finding" of competency. *Id.*

We have further held that when there is conflicting expert medical testimony regarding a criminal defendant's competency to stand trial, this court will not "attempt to weigh the evidence or pass on the credibility of witnesses. . . ." *Jones v. State*, 317 Ark. 131, 136, 876 S.W.2d 262, 265 (1994) (holding that "[i]t is within the Trial Court's discretion to rely on a second evaluation when making the competency determination because the issue of com-

petence pertains directly to the accused's ability to understand the charges against him and assist in his defense"); *see also Carrier v. State*, 278 Ark. 542, 543, 647 S.W.2d 449, 450 (1983) (holding that this court "does not attempt to weigh the evidence or pass on the credibility of the medical reports where the opinions of the doctors conflict").

■■ In the instant case, substantial evidence exists to support the circuit court's finding that Thessing was competent to stand trial. In addition to the circuit judge's own assessment of Thessing, he relied on reports signed by Dr. Michael J. Simon, Dr. John R. Anderson, Dr. O. Wendell Hall, III, and Dr. Charles H. Mallory, after extensive examinations at the Arkansas State Hospital, all of which concluded that Thessing was competent to stand trial. These reports provide substantial evidence to support the circuit court's finding of competency. *See Carrier*, 278 Ark. at 544, 647 S.W.2d at 450 (holding that the psychiatric report of the Arkansas State Hospital that found the appellant in that case to be "fit and responsible" was substantial evidence to support the lower court's finding of competency). Admittedly, Thessing had his own witnesses who testified to his incompetency, but our case law is clear that where opinions of medical experts conflict, we do not weigh the evidence that was before the circuit judge, but look only to the evidence supporting a finding of competency. We affirm the circuit judge on this point.

## II. Voir Dire

Thessing next asserts that the circuit judge erred and deprived him of his right to due process of law when he denied defense counsel the right to question prospective jurors after the prosecutor challenged those jurors for cause on whether they could impose the death penalty under certain circumstances. Thessing contends that this error was even more obvious in light of the fact that the circuit judge himself conducted rehabilitative questioning of prospective jurors in the *venire* who were inclined to impose the death penalty on Thessing.

We have stated the following regarding our standard for reviewing a challenge to the *voir dire* process:

> The extent and scope of voir dire examination is within the sound discretion of the circuit judge, and the latitude of that discretion is wide. *See Henry v. State*, 309 Ark. 1, 828 S.W.2d 346

(1992). The judge's restriction of that examination will not be reversed on appeal unless that discretion is clearly abused. *Id.* Abuse of discretion occurs when the circuit judge acts arbitrarily or groundlessly. *See Walker v. State*, 304 Ark. 393, 803 S.W.2d 502 (1991).

Arkansas Rules of Criminal Procedure provide the procedure for the conduct of proper voir dire in a criminal trial:

(a) Voir dire examination shall be conducted for the purpose of discovering bases for challenge for cause and for the purpose of gaining knowledge to enable the parties to intelligently exercise peremptory challenges. The judge shall initiate the voir dire examination by:

(i) identifying the parties; and

(ii) identifying the respective counsel; and

(iii) revealing the names of those witnesses whose names have been made known to the court by the parties; and

(iv) briefly outlining the nature of the case.

(b) The judge shall then put to the prospective jurors any question which he thinks necessary touching their qualifications to serve as jurors in the cause on trial. *The judge shall also permit such additional questions by the defendant or his attorney and the prosecuting attorney as the judge deems reasonable and proper.*

Ark. R.Crim. P. 32.2(a) and (b) (emphasis added). The fact that the Rules allow the circuit judge to permit such additional questioning as he or she deems proper underscores the discretion vested in the circuit judge.

*Isom v. State*, 356 Ark. 156, 171-72, 148 S.W.3d 257, 267-68 (2004).

As the State correctly underscores, the circuit judge is responsible for regulating and conducting *voir dire*. Considering the broad discretion the circuit judge has in *voir dire*, there has been no evidence presented in this case that the judge clearly abused that discretion in refusing to allow defense counsel to ask rehabilitative questions to certain prospective jurors that the State chose to strike for cause. Nor has it been shown that it was an abuse of the circuit judge's discretion to choose to question some prospective jurors, and not others.

Thessing cites this court to *O'Connell v. State*, 480 So. 2d 1284 (Fla. 1985), in support of his argument that his right to due process of law was violated. In *O'Connell*, the Florida Supreme Court found reversible error when the trial court refused to allow defense counsel to question prospective jurors who were excluded based upon their opposition to capital punishment. The State explains that the key distinction from the instant case lies in the Florida Supreme Court's reliance on its rule of criminal procedure 3.300(b), which grants both sides the absolute right to examine jurors orally during *voir dire*. We agree with the State that the *O'Connell* case provides no guidance for the case at hand.

Because Rule 32.2 of the Arkansas Rules of Criminal Procedure provides that a circuit judge is only required to ask questions of jurors that he believes are necessary and to permit attorneys to ask additional questions only if the circuit judge deems them reasonable and necessary, we conclude that the circuit judge in this case did not clearly abuse his discretion.

### III. Use of Crack Cocaine

Thessing next contends that the circuit judge erred in denying his motion for mistrial after the State's witness Pam McNew testified on direct examination that she, her fiancé, and Thessing used crack cocaine at her house after Thessing told her that earlier that evening he had killed someone. Thessing explains that the circuit judge ruled that the State could question Ms. McNew on direct examination about smoking crack with Thessing because it was part of the *res gestae* of the crime. Thessing argues, however, that Ms. McNew's testimony was inadmissible under Arkansas Rule of Evidence 404(b) and was introduced by the State solely for the purpose of establishing that Thessing was a bad person who had a propensity to commit crime. He adds that Ms. McNew's testimony shows that his drug use did not take place at the crime scene; nor was it in any way contemporaneous to the crime. Thus, he claims that the circuit court's ruling that this evidence was admissible as part of the *res gestae* of the offense was incorrect. He further maintains that this testimony prejudiced him because it left in the jurors' minds the inflammatory image that he was a "conscienceless beast" who could commit a murder and then go celebrate with his friends.

This court has said the following regarding our review of the denial of a mistrial motion:

A mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *See Moore v. State*, 355 Ark. 657, 144 S.W.3d 260 (2004). The circuit court has wide discretion in granting or denying a mistrial motion, and, absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. *See id.*

*King v. State*, 361 Ark. 402, 405, 206 S.W.3d 883, 885 (2005).

Turning to the merits on this point, Rule 404(b) reads:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2005). This court has previously described the exceptions under Rule 404(b):

[U]nder this rule, evidence of other crimes, wrongs, or acts may be admissible to prove motive. We have said that, when the purpose of evidence is to show motive, anything and everything that might have influenced the commission of the act may, as a rule, be shown. *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996); *Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996). The State is entitled to produce evidence showing circumstances which explain the act, show a motive for killing, or illustrate the accused's state of mind. *Echols v. State, supra; Smith v. State*, 310 Ark. 247, 837 S.W.2d 279 (1992).

*Barrett v. State*, 354 Ark. 187, 201, 119 S.W.3d 485, 494 (2003).

With respect to drug use as part of the *res gestae*, we have said generally "that evidence of drug use and drug dealing was clearly part of the *res gestae* of the crime where it was intermingled and contemporaneous with the commission of the crimes charged." *Id.* This court has further said:

Under the *res gestae* exception, the State is entitled to introduce evidence showing all circumstances which explain the charged act,

show a motive for acting, or illustrate the accused's state of mind if other criminal offenses are brought to light. *Haynes v. State, supra. Specifically, all of the circumstances connected with a particular crime may be shown to put the jury in possession of the entire transaction. Haynes v. State, supra.* Where separate incidents comprise one continuing criminal episode or an overall criminal transaction, or are intermingled with the crime actually charged, the evidence is admissible. *See Ruiz & Van Denton v. State,* 265 Ark. 875, 582 S.W.2d 915 (1979); *Thomas v. State,* 273 Ark. 50, 615 S.W.2d 361 (1981); *Henderson v. State,* 284 Ark. 493, 684 S.W.2d 231 (1985). *Res gestae* testimony and evidence is presumptively admissible. *Henderson, supra; Lair v. State,* 283 Ark. 237, 675 S.W.2d 361 (1984); *Love v. State,* 281 Ark. 379, 664 S.W.2d 457 (1984); *Hobbs v. State,* 277 Ark. 271, 641 S.W.2d 9 (1982).

*Gaines v. State,* 340 Ark. 99, 110, 8 S.W.3d 547, 554 (2000) (emphasis added).

In *Gaines v. State, supra,* evidence that drug use and drug dealing occurred prior to the occurrence of the crime for which the appellant was charged was permissible as *res gestae* evidence. This court held that the evidence was admissible as such because it was clearly intermingled and contemporaneous with the crime and culminated in the commission of the crimes charged.

When we consider the broad scope of evidence admissible as *res gestae* evidence under our case law, we conclude that testimony regarding Thessing's drug use was admissible under Rule 404(b) as *res gestae* evidence. In addition to capital murder, Thessing was charged with burglary and two counts of theft by receiving. As the State explains, after committing these crimes, Thessing took the items he had stolen to Pam McNew's home to stash them there. He then discussed his crimes with Ms. McNew and contemplated a method to cover up possible evidence against him. He even solicited the help of Ms. McNew's fiancé in burning down Ms. Basinger's home. He and his friends next smoked crack cocaine purchased with money taken from Ms. Basinger. We agree with the State that the testimony of Thessing's drug use gave the jury knowledge of the entire transaction. Because we have held that all of the circumstances intermingled with a particular crime may be shown for that purpose, we hold that evidence of Thessing's use of crack cocaine was admissible under Rule 404(b) as part of the *res gestae.*

## IV. Judged Competent for Trial

Thessing next claims that the circuit judge should have granted his motion for mistrial or, at least, admonished the jury to disregard the deputy prosecuting attorney's statement to the jury in his closing argument during the guilt phase of the trial that Thessing "has been judged competent for trial." According to Thessing, whether he was competent to stand trial was a matter that had already been decided by the circuit judge. He further contends that competency was not an issue for the jury to decide and that the argument could serve no purpose except to prejudice the jury against the mitigation evidence of his long-standing mental illness that Thessing planned to present to the jurors in the penalty phase of the trial. In short, Thessing urges that the prosecutor's argument of his adjudged mental competence referred to a matter outside the record before the jury.

### a. Preservation

The State first observes that Thessing's claim to prejudice in the penalty phase was not made to the circuit judge. Thus, the State maintains that this argument was not preserved for appeal and should not be heard by this court.

We agree with the State that Thessing's contention that he was prejudiced in the penalty phase by this closing argument in the guilt phase was not preserved for our review. Nevertheless, we are cognizant of the fact that Rule 10 of the Rules of Appellate Procedure – Criminal provides that this court shall consider and determine: (iv) Whether the trial court failed in its obligation to intervene *without objection* to correct a serious error by admonition or declaring a mistrial. Ark. R. App. P. – Crim. 10(b)(iv) (2005) (emphasis added). Accordingly, we are compelled to analyze this point in light of our rule.

### b. Merits

As already noted, a mistrial is a drastic remedy that should only be employed when an error is so prejudicial that it affects the fundamental fairness of the trial or prevents justice from being served. *See King v. State, supra.* This court has also declared that "[c]losing arguments must be confined to questions in issue, the evidence introduced and all reasonable inferences and deductions which can be drawn therefrom." *Williams v. State,* 259 Ark. 667, 673, 535 S.W.2d 842, 846 (1976). According to this court,

"[w]henever trial counsel argues matter that is beyond the record and states facts or makes assertions not supported by any evidence that are prejudicial to the opposite party, there is clearly error." *Id.* at 673, 535 S.W.2d at 847. *See also Wilkens v. State,* 261 Ark. 243, 547 S.W.2d 116 (1977).

This court has further observed when an admonition to counsel to correct a statement made outside the record may be appropriate:

> When objection is made, the presiding judge should appropriately reprimand counsel and instruct the jury not to consider the statement, and in short, do everything possible to see that the verdict of the jury is neither produced nor influenced by such argument. The failure to sustain a proper objection to argument of matters not disclosed by the record is serious error, because it gives the appearance that the improper argument has not only the sanction but the endorsement of the court. It has even been said that the overruling of a proper objection to a statement amounting to a declaration of law is tantamount to the giving of an instruction to that effect. It is true that the trial judge has a wide latitude of discretion in the control of arguments to the jury, but it is not unlimited. It has been said that this court will always reverse where counsel goes beyond the record to state facts that are prejudicial to the opposite party unless the trial court has by its ruling removed the prejudice. We have also said that failure of the trial court to interfere calls for a reversal.

*Williams,* 259 Ark. at 673-74, 535 S.W.2d at 847 (citations omitted).

The blackletter law cited above and underscored by Thessing is correctly stated, but we conclude that the facts of this case do not support the application of that law. There is, first, the fact that Thessing, by his own testimony at trial, put his mental competence at issue. Throughout his testimony he alluded to satanic cults attempting to influence and control him and that people would not listen to him and thought he was "crazy." Thessing testified that he had a good idea who had killed Ms. Basinger. When asked why Ms. Basinger was killed, Thessing replied:

> I don't know why she specifically was killed, no, but I, I have been having problems similar for a long time. And I have told judges, and I have told attorneys. I have told police. I have tried to make police reports. I have filed lawsuits. I have wrote complaints

and grievances, sheriff's [sic], detectives, you name it. I have told everybody for the last ten years, Hey, I have got some real serious problems with people out here killing people and poisoning people and spreading contamination, terrorists, militants, whoever they are, satanic cults, gangs.

I have documentation for the last ten years where I have been trying to tell people about this and won't listen and it's almost like they're all in on it. And I know it sounds crazy and you're saying how does he know about all this and — if he is not part of it. And if, even in Jesus's day why — can't you see he is possessed and have the devil? And others say, no, he is not. He is a good man. And I have been trying to tell everybody for the last ten years, and if everybody had listened, then Ms. Basinger probably wouldn't be dead today.

Thessing further explained why Ms. Basinger would not be dead if people had listened to him:

Because maybe they would have stopped them before this happened. They have done the same thing to me. I have been poisoned. I have been beat, and they have even put a mark on my hand and forehead, the scar on my head. And I have tried to tell everybody about it, and nobody will listen. They think I'm delusional. They think I'm crazy.

There is, secondly, the history at the trial itself of what led up to the prosecutor's comment about Thessing's competency in his argument at the conclusion of the guilt phase. When the prosecutor at trial asked the circuit judge to inform the jury that Thessing had been found competent to stand trial, defense counsel objected. At that point, the prosecutor withdrew his request, provided that he could argue to the jury that Thessing had no "mental disease or defect" in closing argument. The circuit judge agreed that would be okay, and there was no objection to his ruling by defense counsel.

As a third point, the State adds that prior to closing argument during the guilt phase, the circuit judge instructed the jury that the arguments of counsel were not evidence and that any argument without a basis in the evidence should be disregarded. It was against this backdrop that the circuit judge denied Thessing's motion for mistrial and admonition after the prosecutor told the jury that Thessing had been "judged competent for trial."

As already noted under this point, Rule 10(b)(iv) of our Arkansas Rules of Appellate Procedure – Criminal requires this

court's review of serious error even when counsel makes no objection to that error at trial. We agree with Thessing that he has raised an allegation of serious error, which this court must review.

Nevertheless, we hold that no reversible error occurred. There is no question but that Thessing put his mental competency at issue in the guilt phase of his trial by his direct testimony, even though he did not formally raise mental illness and defect as a defense. Because he did so, he waived any protection against the circuit judge's pretrial ruling on his competence to stand trial. *See, e.g., Lyles v. United States,* 254 F.2d 725 (D.C. Cir. 1957), *cert. denied,* 356 U.S. 961 (D.C. Cir. 1958), *overruled in part on other grounds, United States v. Brawner,* 471 F.2d 969 (1972) (where defendant introduced evidence of his incompetency at trial, as a matter of trial strategy, he waived the statutory proscription against advising the jury of a court finding of competency). Moreover, the jury was instructed that counsel's arguments were just that, arguments, and should not be construed as evidence. *See, e.g., Dunlap v. State,* 292 Ark. 51, 728 S.W.2d 155 (1987) (holding that where the jury is instructed by the trial court that counsel's arguments during closing arguments were not evidence, the jury is presumed to have followed the instruction).

As a final point, it is clear to this court that the jury in fact did consider Thessing's mental illness as a mitigating circumstance. In Verdict Form 2A, the jury unanimously found the following as a mitigator: "In addition to his mental illness, Billy Thessing was suffering from drug and alcohol abuse at the time of Mattie Basinger's death."

Under Verdict Form 2B, some jurors found three mitigating circumstances, though the vote was not unanimous, that included reference to Thessing's mental illness. In Verdict Form 2C, jurors found that some evidence of mental illness as a mitigator in three instances had been presented though they did not believe that this evidence rose to the level of a mitigating circumstance.

We conclude that whatever the impact of the prosecutor's argument that Thessing had been judged competent, the jury unanimously found Thessing's mental illness as a mitigating circumstance. Any prejudice resulting from that comment was minimal indeed.

We hold that there was no reversible error on this point.

## V. Pecuniary Gain

Thessing next claims that in the penalty phase of the trial, the circuit judge erred in finding that in the guilt phase of the trial, the State had introduced substantial evidence of the aggravating circumstance that Thessing murdered Ms. Basinger for pecuniary gain.[1] Thessing concedes that while the prosecutor did introduce substantial evidence in the guilt phase that he took Ms. Basinger's automobile and other personal property from her home, he contends that the State failed to introduce substantial evidence that his motive for murdering Ms. Basinger was to realize a pecuniary gain. Specifically, he maintains that the State failed to do this because it did not prove the monetary value of any of the property he took. Thus, he argues that the jurors had to engage in speculation or conjecture to find that he murdered Ms. Basinger for pecuniary gain.

In support of his argument, Thessing cites us to an Arkansas statute, which states, in pertinent part, " 'Pecuniary gain' means the amount of money or the value of property derived from the commission of the offense[.]" Ark. Code Ann. § 5-4-201(d) (Repl. 1997). He also cites us to a dictionary definition and this court's case law that states that "pecuniary gain" is capable of understanding by ordinary jurors. He explains that during the guilt phase of the trial, the State never proved monetary value at all.

In determining whether an aggravating circumstance was properly submitted to the jury during the penalty phase of a trial, this court has said:

> Whenever there is evidence of an aggravating or mitigating circumstance, however slight, the matter should be submitted to the jury for consideration. Once the jury has found that an aggravating circumstance exists beyond a reasonable doubt, this court may affirm only if the State has presented substantial evidence in support of each element therein. Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other and permits the trier of fact to reach a conclusion without having to resort to speculation or conjecture. To make this determination, this court views the evidence in the light most favorable to the State to determine whether any rational

---

[1] The aggravating circumstance at issue here is that "[t]he capital murder was committed for pecuniary gain." Ark. Code Ann. § 5-4-604(6) (Repl. 2006).

trier of fact could have found the existence of the aggravating circumstance beyond a reasonable doubt.

*Roberts v. State*, 352 Ark. 489, 506-07, 102 S.W.3d 482, 494 (2003) (citations omitted).

This court has held that proof of theft from the victim can support a finding that a capital murder was committed for pecuniary gain. *See Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995). In *Nooner*, there was evidence that the victim's checkbook was taken, that items from the victim's pocket were on the floor, and that the victim's hands were raised in a videotape of the crime. Under those facts, this court held that the evidence of pecuniary gain was clearly sufficient. This court has further held that the phrase "pecuniary gain" is "of such common understanding and practice that it cannot be said an ordinary man or juror would have to speculate as to its meaning." *Neal v. State*, 259 Ark. 27, 32, 531 S.W.2d 17, 20 (1975), *vacated in part on other grounds*, 429 U.S. 808 (1976).

In deciding whether there was substantial evidence that Thessing murdered Ms. Basinger for pecuniary gain, we look at the evidence in the light most favorable to the State. *Roberts v. State, supra*. In this case, Thessing took the victim's car, television set, silverware, Bible, and other items of personal property from her home after he killed her. The jury was asked whether Thessing committed the crime *for* pecuniary gain. Considering the vast array of items he removed from the victim's home, we hold that there was substantial evidence presented to the jury that Thessing committed the murder for pecuniary gain. We affirm the circuit judge on this point.

### VI. *Vulnerable Victim*

Thessing next contends that the State failed to prove sufficiently in the guilt phase of the trial that Ms. Basinger had a temporary or permanent severe physical disability that would interfere with her ability to flee or defend herself from Thessing's attack. He claims that the State proved, at most, that Ms. Basinger was sixty-seven years old and weighed 256 pounds but that this does not constitute a severe physical disability. While Thessing concedes that the State proved that Ms. Basinger had recently been through chemotherapy and radiation treatment due to cervical cancer, he maintains that the State failed to prove that he knew of

Ms. Basinger's previous ill health or reasonably could have known about it. Plus, he points out that she had recovered sufficiently to drive a car and care for her injured daughter. Thessing further asserts that neither advanced age nor being overweight is a temporary or permanent severe physical disability.

The following aggravating circumstance is at issue in this case:

> (10) The capital murder was committed against a person whom the defendant knew or reasonably should have known was especially vulnerable to the attack because:

>> (A) Of either a temporary or permanent severe physical or mental disability which would interfere with the victim's ability to flee or to defend himself . . .

Ark. Code Ann. § 5-4-604(10)(A) (Repl. 2006).

The appellant's challenge to the circuit judge's finding that the State introduced substantial evidence of the aggravated circumstance that Ms. Basinger was an especially vulnerable victim is reviewed under the same standard included in the previous point on appeal. *See Roberts v. State, supra.*

We conclude that there was substantial evidence presented to the jury supporting a finding of this aggravating circumstance. There are essentially two elements involved here. First, there must have been substantial evidence that Ms. Basinger suffered from a temporary or permanent severe physical disability that interfered with her ability to flee or defend herself. The State proved not only that Ms. Basinger was sixty-seven years old and overweight, but also that she had recently undergone chemotherapy and radiation treatments.

Secondly, there must have been substantial evidence that Thessing either knew or should have known that because of her disability Ms. Basinger was especially vulnerable to the attack. In light of the manner in which Ms. Basinger was killed (beaten to death without being able to flee or defend herself), the nature of the items stolen by Thessing from her home, and the fact that he had been to her house before, we hold that substantial evidence exists supporting the jury's verdict regarding this aggravating circumstance.

## VII. Caldwell Argument

For his next point, Thessing urges that the circuit judge erred in denying his motion for a mistrial after the prosecutor told jurors during closing argument in the penalty phase of the trial that the governor, not the jurors, would determine the time and manner of Thessing's death. According to Thessing, the circuit judge should have granted his mistrial motion, or at least should have admonished the jury, because the prosecuting attorney's argument had the effect of lessening the jury's sense of responsibility for determining the appropriateness of punishing him with death.

Thessing adds on this point that the United States Supreme Court, in *Caldwell v. Mississippi*, 472 U.S. 320 (1985), held that such remarks by a prosecuting attorney violate a defendant's Eighth Amendment right to reliability in the determination that death is the appropriate punishment in a specific case. He further observes that even though the Court's opinion in *Caldwell* was a plurality opinion, it stands for the proposition that a prosecutor in argument cannot diminish the jury's sense of responsibility for assessing the death penalty. *See Romano v. Oklahoma*, 512 U.S. 1 (1994).

According to Thessing, the prosecuting attorney's argument in this case was wrong and misleading because it was the circuit judge, not the governor, who would determine the date of his execution. He further states that it is not the governor who decides the manner of execution, but rather this is determined by state statute. *See* Ark. Code Ann. § 5-4-617(a)(1) (Repl. 2006).

As a final point, he emphasizes that the circuit judge gave no admonition to the jury, or made any remarks, that might have corrected the prosecuting attorney's comments and directed the jurors to focus on their responsibility to determine whether appellant should be put to death.

The United States Supreme Court held in *Caldwell v. Mississippi*, 472 U.S. 320, 336 (1985) (plurality opinion) (O'Connor, J., concurring in part and concurring in judgment), that counsel must not mislead a jury regarding its role in the sentencing decision. In *Romano v. Oklahoma*, 512 U.S. 1 (1994), the United States Supreme Court ruled that Justice O'Connor's opinion was controlling, thus making *Caldwell* apply only to the types of comment "that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it

should for the sentencing decision." *Romano*, 512 U.S. at 9. The Court thus concluded that "[t]o establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Id*. In *Romano*, the Court held that where evidence was neither false at the time it was admitted nor was it pertinent to the jury's role in the sentencing process, it did not affirmatively mislead the jury regarding its role in the sentencing process.

In 1991, our court analyzed the *Caldwell* decision. In *Coulter v. State*, 304 Ark. 527, 804 S.W.2d 348 (1991), *cert. denied*, 502 U.S. 829 (1991), we noted that "[t]he Supreme Court's specific concern in the *Caldwell* case obviously was with the attempt of a prosecutor to make jurors think that 'others,' in that case an appellate court, would ultimately be responsible for the death of the person they were asked to sentence to that fate." *Coulter*, 304 Ark. at 538, 804 S.W.2d at 354. This court stated that this factor presented a major distinction from the facts in *Coulter*. In *Coulter*, this court held that "[w]hile the prosecutor touched on this Court's role when he said Coulter, if sentenced to death, would die by lethal injection 'after his right to appeal,' that single remark does not purport to place the responsibility for death sentencing upon 'others.' " *Id*. This court went on to explain that the real issue was whether the prosecutor violated the Supreme Court's admonition against attempting to make the jury less cognizant of the "gravity of its task" and less aware of its "truly awesome responsibility" by stating: "The death penalty is not something that you impose; it's not something I impose, nor his Honor." *Id*. The following is this court's analysis and conclusion in *Coulter*:

> Viewed in the context of the colloquy among the prosecutor, defense counsel, and the judge, the prosecutor's remarks do not, in our opinion, violate the standard set in the *Caldwell* case. When the objection was raised, the judge responded by saying "the jury has a responsibility to carry out the law." That deflected the prosecutor's references which might have been perceived as suggesting the jury's responsibility was diminished. The prosecutor then agreed, "That's all I'm trying to say Your Honor." Defense counsel then concurred in the judge's statement that it was the jury's responsibility to "carry out the law as they see it."
>
> After the fleeting reference to the "right of appeal," the prosecutor definitely focused his argument on the responsibility of the jurors, sympathizing with them in the performance of a "tough job."

> While some of the prosecutor's remarks were on the borderline of diminishing the jury's role in returning a death sentence, when the judge's remarks, those of defense counsel, and the prosecutor's concluding statements are added, we conclude the jury was made well aware of its duty and no error occurred.

*Id.* at 538–39, 804 S.W.2d at 354.

■ In the case now before us, we conclude that the prosecuting attorney did not make an inaccurate statement about the jury's role in sentencing Thessing to death, and that is what is critical. In fact, the prosecutor specifically asked the jury in closing argument to sentence Thessing to death and reminded them that they were the only ones who could make that decision. In that respect, this case is similar to *Coulter*, where the prosecutor reminded the jury of its responsibility under the law. This was an accurate description of the jury's role.

The circuit judge did not abuse his discretion in denying Thessing's motion for mistrial or by not admonishing the jury on this point.

### VIII. Mitigators Probably Existed

Thessing next claims that, in the penalty phase of the trial, the circuit judge erred in denying his objections to the jury instructions and verdict forms that imposed on him the burden of proving that mitigating circumstances "probably existed." Thessing explains that during the penalty phase, the circuit judge gave the jury instructions and a mitigating–circumstances verdict form that told the jurors that in order to find a mitigating circumstance, they had to find that it "probably existed." He notes, however, that the provisions of Arkansas' statutory death penalty sentencing procedure (Ark. Code Ann. §§ 5-4-602, 603, and 604 (Repl. 1997)) do not include words or phrases such as "probably," "by a preponderance of the evidence," or "more likely than not" that would impose on the defendant in the death penalty phase of a capital murder trial a burden to prove that mitigating circumstances exist. Thessing adds that the sentencing statute requires that a mitigating circumstance be "found to exist." *See* Ark. Code Ann. § 5-4-603(a)(2) (Repl. 1997). The statute does not, according to Thessing, place any burden on the defendant to prove mitigating circumstances "probably" exist.

Verdict form AMCI 2d 1008, given to the jury by the court, reads as follows regarding mitigating circumstances:

> Unlike an aggravating circumstance, you are not required to be convinced of the existence of a mitigating circumstance beyond a reasonable doubt. *A mitigating circumstance is shown if you believe from the evidence that it probably existed.*

The verdict form Thessing requested to be submitted to the jury reads:

> Unlike an aggravating circumstance, you are not required to be convinced of the existence of a mitigating circumstance beyond a reasonable doubt. *A mitigating circumstance is shown if you believe from the evidence that it existed.*

(Emphasis added.)

The State appears to concede that the model verdict form does not follow the statutes at issue, as it declares in its brief that the model instructions are written to permit the finding of mitigating circumstances that merely probably exist, although the statutes appear to require finding only those that actually exist. The State adds in a footnote that it may be appropriate for this court's committee on Model Jury Instructions–Criminal to consider whether the instructions only permit finding mitigating circumstances that merely probably exist. Despite this concession, the State argues that any discrepancy between the statute and model instruction inured to Thessing's benefit, and the jury found beyond a reasonable doubt that the aggravating circumstances outweighed any mitigating circumstances found to probably exist.

We do not believe that the addition of the word "probably" in the model instruction that the jury received regarding mitigating factors in any way affected which party had the burden of proof. Nor do we believe that this language suggested to the jury that Thessing had the burden of proof. Nothing in the model instruction given to the jury states that Thessing was required to prove that the mitigating factors probably existed. It simply states that "[a] mitigating circumstance is shown if you believe from the evidence that it probably existed." We agree with the State that the instruction is worded differently from the statute and that this may be an issue that this court's committee on model jury instructions should address. Nevertheless, we also agree with the State that any discrepancy in wording actually benefitted Thessing as proof of a mitigator under the standard of "probably existed" is less severe than actual existence. We affirm on this point.

## IX. Time of Mitigators

For his final point, Thessing argues that the circuit judge failed to bring to the jury's attention a matter essential to its consideration of the death penalty when the circuit judge failed to give the jury consistent instructions concerning at what point in his life mitigating circumstances existed. Appellant explains that the introductory sentence of Part A of Form 2 given to the jury reads, "[w]e unanimously find that the following mitigating circumstances probably existed at the time of the murder." The introductory sentence of Part B of Form 2 given to the jury stated, "[o]ne or more members of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree." The introductory sentence of Part C of Form 2 given to the jury stated, "[t]here was evidence of the following mitigating circumstances, but the jury unanimously agreed that they did not exist at the time of the murder."

Each of these three introductory sentences was followed by a list of the same twenty-two mitigating circumstances. Thus, Thessing contends that the confusion lies in the fact that Part A and Part C tell the jurors they are to evaluate the evidence of mitigating circumstances as of "the time of the murder," but there is no such reference to a specific point in time in the introductory sentence of Part B. Thessing cites us to *Boyde v. California*, 494 U.S. 370 (1990), for the proposition that in a death penalty case, a jury instruction violates the Eighth Amendment if it is so ambiguous that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.

Thessing does acknowledge that this issue was not raised by defense counsel to the circuit judge, but he explains that this court may nonetheless consider this issue, as this court has recognized in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), an exception to the contemporaneous objection rule applicable in death-penalty cases where the circuit judge fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself. *See also* Ark. R. App. P. – Crim. 10(b)(ii) (2005). He contends that, because the mitigating circumstances verdict forms were confusing, they should not have been submitted to the jury, citing *Simpson v. State*, 339 Ark. 467, 6 S.W.3d 104 (1999).

Thessing mounts the further argument that not only was Part A of Form 2 inconsistent with Part B of Form 2, but the

presence of the phrase "at the time of the murder" also created a reasonable likelihood that the jury did not consider some of his mitigating evidence. He states that assuming the jurors followed the circuit judge's instructions in Part A of Form 2 to limit its consideration of mitigating evidence to whether such evidence probably existed at the time of the murder, then there is a reasonable likelihood that it would have been impossible for the jury to find the eleventh and seventeenth listed mitigating circumstances because these two circumstances would only take place after Thessing is put to death. The eleventh mitigating circumstance stated: "Billy Thessing was married to Tammy Scott and they had a son who is now a teenager. If Billy Thessing is executed this will have a tremendous detrimental effect on his son." The seventeenth mitigating circumstance stated: "The execution of Billy Thessing would adversely impact members of his family other than his son." Thus, the appellant opines that the jury could not logically find that a future event existed at the time of the murder.

Thessing also contends that it is likely that the presence of the phrase "at the time of the murder" in Part A kept the jury from finding the listed mitigating circumstances that had taken place long ago — for example, the third listed mitigating circumstance stated: "Billy Thessing was abused by one of several sets of foster parents as a child." The fourth stated: "Billy Thessing's mother was murdered by his father when Billy was six months old." Thessing contends that common sense would tell the jurors that events that happened when he was a child could not have existed at the time of the murder.

The State is correct that this argument was not made by Thessing to the circuit judge, and as a general rule, should not be heard by this court for the first time on appeal. In *Wicks v. State, supra*, this court recognized an exception to the general rule that an argument for reversal will not be considered in absence of an objection made in trial court. This court has recognized that an error in the completion of the penalty-phase verdict forms concerning mitigating circumstances can fall within the *Wicks* exception for matters essential to consideration of the death penalty. *See Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004). In addition, as already referenced in this opinion, our Rule 10(b)(iv) provides for our review of serious error without objection at trial by defense counsel. *See* Ark. R. App. P. – Crim. 10(b)(iv) (2005). And Rule 10(b)(ii) provides for our review where the circuit court

fails in its obligation to bring to the jury's attention a matter essential to its consideration of the death penalty. Ark. R. App. P. – Crim. 10(b)(ii) (2005).

While, as noted above, this court has held that an error in the completion of a verdict form in the penalty phase of a trial fits within one of the *Wicks* exceptions for matters essential to consideration of the death penalty, this court has not yet determined whether an allegedly conflicting verdict form would constitute such an exception. If this court determines that this is not an exception under *Wicks* or Rule 10(b)(iv) or Rule 10(b)(ii), then there will be no reason to consider the merits of this argument because it was not raised before the circuit judge.

We do not agree that the discrepancy in verdict forms argued by Thessing rises to the level of serious error or a matter essential for the jury's consideration. In *Anderson, supra,* this court held that where confusing jury forms lead jury members "to disregard *any* consideration of mitigating circumstances," the error is not harmless. 357 Ark. at 222, 163 S.W.3d at 359; *see also Weeks v. Angelone,* 528 U.S. 225 (2000) (holding that an Eighth Amendment violation does not exist where there is only a slight possibility that the jury considered itself precluded from considering mitigating evidence, but there must be a showing that there was a reasonable likelihood that the jury felt so restrained). The mere fact that the jurors in this case unanimously found only one mitigating factor to exist does not prove that the jury was confused or that it disregarded consideration of other mitigating circumstances.

As an additional point, we believe that the jury understood that mitigating factors occurring either in childhood, or in the form of post-execution remorse by family members, were to be considered in its assessment of whether the death penalty was appropriate under any of the three verdict forms. Indeed, all three verdict forms listed the potential mitigators in question. Our conclusion is bolstered by the fact that Part B of Form 2 does not include the "at the time of the murder" language, but members of the jury still did not check the mitigators in question, which were mitigators 3, 4, 11, and 17. We affirm on this point.

The record has been reviewed in this case under Supreme Court Rule 4-3(h), and no reversible error has been found.

Affirmed.