Cite as 2025 Ark. 137

# SUPREME COURT OF ARKANSAS
**No.** CR–25–20

| | | | |
|---|---|---|---|
| DYLAN COLLINS | | **Opinion Delivered:** September 25, 2025 | |
| | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-23-214] | |
| V. | | | |
| STATE OF ARKANSAS | | HONORABLE TROY B. BRASWELL, JR., JUDGE | |
| | APPELLEE | <u>AFFIRMED</u>. | |

**CODY HILAND, Associate Justice**

Dylan Collins was convicted by a Faulkner County jury of capital murder, for which he received a sentence of life imprisonment plus ten years for firearm enhancement. On appeal, Collins argues that (1) because the State failed to introduce substantial evidence to negate his justification defense, there is insufficient evidence to support his conviction of capital murder and (2) the circuit court erred in restricting voir dire regarding the standard of proof for a criminal prosecution. We affirm.

## I. *Facts*

On January 14, 2023, Arva Wilkerson called 911 to report a gray-colored Honda with a Tennessee license plate traveling at approximately one hundred miles per hour on the interstate near Maumelle. After reciting the specific license plate number to the emergency operator, but before the call ended, Wilkerson stated, "[H]e is on to me." Collins, the driver of the aforementioned vehicle, noticed Wilkerson following him after several miles and pulled over to the side of the road. Wilkerson stopped behind him.

Without any communication or interaction, Collins got out of his car, walked toward Wilkerson's truck with his pistol raised, and fired into the vehicle thirteen times. Collins got back in his car, drove to his home in Marion, and destroyed the firearm. At no point did Collins alert the authorities as to what had transpired. Upon seeing the incident unfold, several passersby stopped to render aid to Wilkerson. Despite their efforts, Wilkerson, who was shot four times, died from his wounds the following day.

Subsequent to the initiation of the investigation, Collins was quickly identified as a potential suspect based on the partial license plate number recited by Wilkerson. In response, Taylor Decker, an investigator with the Mayflower Police Department, traveled to Marion to speak to Collins. During the recorded conversation that was introduced at trial, after Collins initially denied being anywhere but in his home at the time in question, he admitted that, in fact, the shooting was a result of self-defense. Collins stated that upon noticing he was being followed, he wanted to "let [Wilkerson] go past [him], but when he pulled over, Wilkerson pulled behind him. So, according to Collins, he "hopped out like this and asked him, why was he following me? [Wilkerson] instantly came to a complete stop and went for his gun." However, following Decker's questioning, it was quickly discerned that Collins neither spoke to Wilkerson nor ever saw him with a weapon.

Several witnesses who stopped to help Wilkerson testified on behalf of the State. Kristen Young testified that as soon as Collins parked his car, he "immediately got out and took a few steps towards [Wilkerson's] truck." Collins lifted a gun in his right hand, "straight out," toward Wilkerson's driver's-side windshield. "And that was when [Collins] started unloading, and he just continued to walk closer to the truck as he continued to fire." Kristen

clarified that it happened so quickly there was no time for any interaction between Collins and Wilkerson. Justin Young, Kristen's husband, provided a similar account of the shooting. Four additional witnesses also testified that no gun was observed in Wilkerson's truck. In fact, it was not until police inventoried Wilkerson's truck that a pistol was found in the closed, center console.

At the conclusion of the State's evidence, defense counsel moved for a directed verdict, arguing the State failed to introduce substantial evidence negating Collins's justification theory—he argued Wilkerson followed Collins, made "aggressive moves," and allegedly reached for a gun. The circuit court denied the motion, ruling that whether Collins acted in self-defense was for the jury to determine. After the defense rested without presenting any evidence, Collins renewed his directed-verdict motion, arguing, again, that that State failed to show that justification was not applicable. The motion was denied for a second time, and Collins was convicted by the jury of capital murder. This appeal followed.

II. *Argument*

A. Sufficiency of the Evidence

When considering the sufficiency of the evidence with regard to justification, the appellate court determines whether substantial evidence supports the jury's verdict that the State negated the defendant's claim of justification. *Brown v. State*, 2020 Ark. App. 198, at 5–6, 595 S.W.3d 456, 460. "Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture." *Gentry v. State*, 2021 Ark. 26, at 5. Because Collins's argument is ultimately a

3

sufficiency challenge, this court "view[s] the evidence in the light most favorable to the State." *Id.*

If justification is raised and "evidence is offered to support it," "the State has the burden of negating the defense." *Id.* Because justification is considered an element of the offense, it must be disproved by the State beyond a reasonable doubt when it is raised. Ark. Code Ann. § 5-1-102(5)(C) (Supp. 2021); *Smith v. State*, 2025 Ark. 83, at 6. Justification is a matter of intent and a question of fact for the jury. *Gentry*, 2021 Ark. 26, at 5. The jury determines the credibility of witnesses as well as the weight and value of their testimony. *Id.* The jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* The jury may choose to believe the State's account of the facts rather than the defendant's. *Id.*

A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is using or about to use unlawful deadly physical force. Ark. Code Ann. § 5-2-607(a)(2) (Supp. 2021). Additionally, a person is not required to retreat before using deadly physical force under the following circumstances: (1) if the person is lawfully present at the location where deadly physical force is used; (2) if the person has a reasonable belief that the person against whom the deadly physical force is used is imminently threatening to cause death or serious physical injury to the person or another person; (3) and the person is not the initial aggressor and has not provoked the person against whom the deadly physical force is used. Ark. Code Ann. § 5-2-607(b) (Supp. 2021).

Here, the jury was instructed that Collins was justified in using deadly physical force to defend himself if he reasonably believed that Wilkerson was using or about to use unlawful deadly physical force. The jury also was instructed that Collins was not justified in using deadly physical force if he knew that it could be avoided by retreating, but that Collins was not required to retreat if he met the aforementioned elements—he was lawfully present, he had a reasonable belief that Wilkerson was imminently threatening to cause him death or serious physical injury, and he was not the initial aggressor.

Based on the evidence, the jury here could reasonably conclude that Collins did not reasonably believe Wilkerson was about to use deadly force on him. While they heard Collins *assumed* Wilkerson had a gun, he readily admitted that he did not see one. The jury was not required to believe Collins's account of the incident. Further, the testimony presented by the State showed that Collins was, in fact, the initial aggressor by getting out of his car and walking toward Wilkerson, pistol raised. Thus, even if the jury concluded that Collins reasonably believed Wilkerson was threatening imminent death or serious harm, Collins would have been required under section 5-2-607 to retreat before justifiably deploying deadly force. As there was sufficient evidence presented to adequately disprove Collin's justification theory and support the conviction of capital murder, we affirm.

B. Voir Dire

The extent and scope of voir dire is within the sound discretion of the circuit court, and the latitude of that discretion is wide. *Thessing v. State*, 365 Ark. 384, 391, 230 S.W.3d 526, 533 (2006). The circuit court's restriction of voir dire will not be reversed on appeal unless that discretion is clearly abused. *Id*. at 392, 230 S.W.3d at 533. Abuse of discretion

occurs when the circuit court acts arbitrarily or groundlessly. *Id.* The court shall initiate voir dire by identifying the parties and their respective counsel, revealing any names of prospective witnesses, and briefly outlining the nature of the case. Ark. R. Crim. P. 32.2(a) (2019). But beyond these four requirements, counsel may ask additional questions only "as the judge deems reasonable and proper." *Nelson v. State*, 2024 Ark. 24, 683 S.W.3d 177. The circuit court does not abuse its discretion by restricting voir dire examination that is potentially confusing to prospective jurors. *E.g., Bader v. State*, 344 Ark. 241, 245, 40 S.W.3d 738, 741 (2001).

In this case, during voir dire, defense counsel told the jury that the State had the burden of proving its case beyond a reasonable doubt. Counsel told the jury that it was "the highest, highest, highest, highest, highest burden of proof" and wanted to use a demonstrable aid to show the jury that reasonable doubt "was at the top of our system of jurisprudence." The State objected to the defense detailing other burdens of proof such as preponderance of the evidence or clear and convincing evidence to contrast with the beyond-a-reasonable-doubt standard because the jury would not be instructed on those lesser standards of proof. The circuit court sustained the objection:

> [W]e are not going to get into other burdens of proof that have nothing to do with this case. The only burden of proof that matters is beyond a reasonable doubt. If you want to discuss beyond a reasonable doubt as it is laid out in the jury instructions and talk to them about that, I have no problem with that. That's perfectly within the purview of questions that I think are appropriate in determining who is a fit juror in this case.

Here, the circuit court's decision was not arbitrary or groundless. The court was well within its discretion in limiting the burdens-of-proof discussion to that of beyond a reasonable doubt. Further discussion of standards—beyond that of which the jury would

6

not be instructed—would risk potential confusion of prospective jurors unfamiliar with those legal standards. This was not an abuse of discretion. We affirm.

## III. *Rule 4-3(a)*

In compliance with Arkansas Supreme Court Rule 4–3(a), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Collins. No prejudicial error has been found.

Affirmed.

*James Law Firm*, by: *William O. "Bill" James, Jr.* and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.